880 P.2d 1098

PRECISION COMPONENTS, INC., an Arizona corporation, and Herbert W. Owens, Jr., an individual, Plaintiffs/Counterdefendants/Appellees,

v.

HARRISON, HARPER, CHRISTIAN & DICHTER, P.C., Appellant.

No. 2 CA–CV 93–0239.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 4, 1993.

Review Denied Oct. 4, 1994.*

* Feldman, C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Sacks, Tierney & Kasen, P.A. by David C. Tierney, Phoenix, for plaintiffs/counterdefendants/appellees.

Harrison, Harper, Christian & Dichter, P.C. by Mark I. Harrison and Stephen G. Montoya, Phoenix, for appellant.

LACAGNINA, Judge.

As a sanction, the trial court ordered the attorneys for the respective parties in the litigation underlying this appeal not to charge their clients for time spent in preparation and filing of a motion for summary judgment and the response thereto. Only the attorneys for the moving party appeal, arguing that the imposition of the sanction deprived them of property without due process of law, that the trial court's findings regarding the motion for summary judgment were erroneous, and that the imposition of the particular sanction was an abuse of discretion.

We hold that the trial court did not abuse its discretion by imposing sanctions against appellant pursuant to its inherent power to sanction attorneys for misconduct. Because the trial court specifically advised the attorneys in a reported conference of its reasons for imposing the sanctions and the type of sanction to be imposed, followed by a lengthy minute entry, the failure of the attorneys to request a hearing on the specifications or for reconsideration of the sanctions imposed prevents us from granting relief for an alleged deprivation of due process. Failure to raise the due process issue in the trial court prevents our review. *Murphy v. Town of Chino Valley*, 163 Ariz. 571, 789 P.2d 1072 (App. 1989).

## DISCUSSION

The day before the attorneys were scheduled to argue appellant's motion for summary judgment, the trial court called the attorneys and told them not to prepare for oral argument set for June 30, 1992. On June 30, in chambers with a court reporter, the trial court stated the reasons for the conference.

I called you yesterday and told you not to prepare for oral argument this morning.

That's your motion. I had another judge estimate its height, and she estimated two feet high.

In determining how to dispose of this matter, I recalled my conversations with both of you early on in a pretrial management conference telling you that I thought this case ought to be settled early because I perceived that there would be a [sic] excess of discovery in the case.

I think my predictions have come true. I don't know how two lawyers of your experience, good reputation and general excellence expect a Superior Court judge to read this or when you expect him to read it. But it would be impossible for anybody to read and rule on a motion for summary judgment that is two feet high and contains something between 2,000 and 3,000 pages.

\* \* \* \* \* \*

I'm going to permit you to withdraw it. If you don't want to withdraw it, that's fine. Withdrawing it means that the defendant withdraws, the plaintiff withdraws the response and you withdraw the reply.

I'm going to ask you not to charge your clients one penny for any time that either of you spent on this motion.

Later during the conference, the following discussion occurred:

And there are many paragraphs in each party's statement of facts that allege facts that aren't supported by the corresponding exhibits.

The rule, Uniform Rule of Practice on summary judgments IV(f) says: "The facts shall be stated in concise, numbered paragraphs. As to each fact—"

I guess the parties here didn't think that the facts had to be concise, only the paragraphs.

"As to each fact, the statement shall refer to the specific portion of the record where the fact may be found."

And, as I already indicated, there were tremendous numbers of places where that simply was not the rule.

So I'm not going to belabor this any longer. I want you to tell me what you recommend, what you think ought to be done.

You expect a Superior Court judge, Steve, to digest that?

MR. DICHTER: I have to. I have no choice. It's not—

THE COURT: You do have a choice. You could do your statement of facts in a reasonable manner.

After the conference, the trial court filed a lengthy minute entry containing specific findings to support the imposition of sanctions. The following excerpts are sufficient to disclose the reasons for the sanctions:

Defendant Valley National Bank has submitted a summary judgment motion to this Court. Plaintiffs Precision Components and Herbert Owens have responded to the motion, and Defendant has replied. The Court conservatively estimates that the two parties have submitted *over 3500 pages* of exhibits in support of or in opposition to this motion. The notebooks submitted, when stacked, are more than 2 feet high.

Both parties have participated in an abuse of the trial court system. First, both parties seem to have drawn the conclusion that quantity is superior to quality. *THIS IS ONE MOTION*, and the issues involved are not so esoteric that they require the Court to read over 3000 pages in order to determine whether there is a genuine issue as to any of the material facts. Even assuming all the "facts" that both parties have alleged are relevant to the disposition of this motion, an assumption this Court could not possibly make, it is not the duty of this Court to search thousands of pages of depositions and documents to determine if somewhere in those pages the alleged facts are supported. It is the duty of the parties to submit the supporting exhibits in a concise and accurate manner, and the parties must "refer to the specific portion of the record where the fact may be found." Rule [IV](f), Uniform Rules of Practice.

\*   \*   \*   \*   \*   \*

Defendant submitted 19 pages of information in support of its very first paragraph. The first 3 pages, however, are the only relevant pages. (See exhibits, 1). Defendant submitted *60 pages* to support paragraph 23, although 10 carefully selected pages would serve the same purpose. (See exhibits, 23). Plaintiffs submitted 26 pages to support paragraph 33, but 3 or 4 pages would have sufficed. (See exhibits, 33). Finally, Plaintiff submitted 19 pages for paragraph 40 when the quotes (2 or 3 pages) are the only relevant information. (See exhibits, 40). These are but a few of the unnecessarily lengthy exhibits. The submission of a motion and support documents of such unnecessary length is intolerable and amounts to an obvious failure to meet the standard of performance expected of attorneys in the State of Arizona, not to mention a violation of Court Rules. "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges...." 17A A.R.S.Sup.Ct. Rules, Rule 42 preamble, par. 4.

\*   \*   \*   \*   \*   \*

There are *MANY* more paragraphs in each party's statement which allege facts that are not supported by the corresponding exhibit. They shall not all be listed because doing so would burden this record and presumably that of the appellate court, beyond that which either should endure.

\*   \*   \*   \*   \*   \*

In light of the blatant abuses of the trial court system by the attorneys for *BOTH PARTIES* to this Motion, the Court further orders that the attorneys involved in

this Motion shall not charge their client(s) for any work done in connection with this Motion. The Court believes that this order is appropriate given the magnitude of the abuses by counsel and issues this order pursuant to the Court's inherent powers as well as its broad power to sanction attorneys for misconduct.

Appellant argues on appeal that the trial court imposed sanctions without informing them

> of the legal foundation (e.g., Rule 11, A.R.S. § 12–341.01, A.R.S. § 12–349, etc.) for sanctions. *See generally, State v. Klem*, 108 Ariz. 349, 350, 498 P.2d 216, 217 (1972) (due process requires specific notice of charge and an opportunity to be heard on the issues raised by the charge). Unaware of the legal basis for the sanctions, it was doubly impossible for appellant to meaningfully respond to the propriety of the sanctions.

We disagree. The record clearly shows the legal basis the court relied upon to impose the sanctions: violation of Rule IV(f), Unif. R.Prac., Sup.Ct.R. 42, preamble, par. 4, and the court's inherent powers to sanction attorneys' misconduct.

■ The appellant's brief does not address the issue of the trial court's inherent power, probably under the mistaken belief that the trial court's authority to impose sanctions was limited by specific rules and statutes creating the power to impose sanctions. The law is otherwise, and the availability of specific procedural rules like Rule 11 does not deprive the trial court of its inherent power to impose sanctions for attorney misconduct before the court. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 49, 111 S.Ct. 2123, 2132, 2135, 115 L.Ed.2d 27, 44, 47 (1991), the Supreme Court stated:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v Hudson*, 7 Cranch [11 U.S.] 32, 34, 3 L Ed 259 (1812); see also *Roadway Express, Inc. v Piper*, 447 US 752, 764, 65 L Ed 2d 488, 100 S Ct

2455 [, 2463] (1980) (citing Hudson). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v Dunn*, 6 Wheat [19 U.S.] 204, 227, 5 L Ed 242 (1821); see also *Ex parte Robinson*, 19 Wall [86 U.S.] 505, 510, 22 L Ed 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v Wabash R. Co.*, 370 US 626, 630–631, 8 L Ed 2d 734, 82 S Ct 1386 [, 1388–1389] (1962).

\* \* \* \* \* \*

The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.

In *Western Systems, Inc. v. Ulloa*, 958 F.2d 864, 873 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 970, 122 L.Ed.2d 125 (1993), the court, citing *Chambers*, stated:

> The Ulloas contend that sanctions are not available under the "inherent powers" of the district court, because those powers were preempted or at least subsumed by Fed.R.Civ.P. 11. The Supreme Court explicitly rejected this theory last year in *Chambers v. Nasco, Inc.*, 501 U.S. 32, 47, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). The Court held that courts retain the inherent power to sanction bad faith conduct during litigation, and that this power exists independent of Rule 11.

*See also Gillette Foods, Inc. v. Bayernwald–Fruchteverwertung*, 977 F.2d 809 (3d Cir. 1992).

■ Appellant argues due process violations, stating that it did not receive notice or an opportunity to be heard on the court's desire to impose sanctions. We agree that the imposition of sanctions should be preceded by some form of notice and opportunity to be heard on the propriety of imposing the sanctions. *Abril v. Harris*, 157 Ariz. 78, 754 P.2d 1353 (App.1987). However, as previously noted, appellant, experienced attorneys,

failed to raise this issue below and never requested a hearing during the proceedings in chambers or after the minute entry was filed, by way of motion or otherwise. In addition, appellant never gave the trial court the opportunity to reconsider the imposition of sanctions in light of its belief that they were unconstitutionally imposed.

█ Even though the appellant failed to preserve the due process issue for appellate review, we engage in some dicta on the subject because we believe appellant was afforded due process under the facts of this case. During the reported hearing, excerpts of which appear in this opinion, the trial court explained to appellant in detail why it was imposing sanctions and what form the sanctions would take: no fee charged to the clients. This was sufficient and fair notice. Nothing in the record suggests that the trial court prevented appellant from arguing against the imposition of the sanction either at the June 30, 1992 hearing or thereafter. The trial court did nothing to prevent appellant from moving for an additional hearing in order to present evidence to excuse or support its conduct. The court discussed appellate review of its decision to impose sanctions and permitted the attorneys the opportunity to make a record, but as hereafter noted, the attorneys did nothing until after the case was settled. Nothing is presented to this court in appellant's brief to indicate what evidence it would have presented in an additional hearing even if one were given. It is obvious from the record that the propriety of imposing the sanctions is based solely on the voluminous summary judgment motion as shown by the record.

Although this is not a case where Rule 11 sanctions were imposed, cases dealing with Rule 11 are instructive on the due process issue. The following discussion from 5A C. Wright and A. Miller, *Federal Practice and Procedure* § 1337 at 128–129 (1990), supports our view that appellant was not deprived of procedural due process by the trial court. In light of these principles, the Donaldson[1] court determined that the heightened protections of criminal contempt proceedings were not required in every Rule 11 case. The opinion noted that neither the text of the rule nor the Advisory Committee Note supported such a contention; indeed, the Note and other policy considerations suggest the opposite conclusion, namely, that whenever possible, the sanctions procedures be limited to the record. Moreover, the Eleventh Circuit pointed out a fundamental difference between judicial disciplinary proceedings and criminal contempt proceedings. According to the court, the former concern the special duties incumbent upon members of the bar as officers of the court, and so differs from the latter, whose more severe sanctions may be applied both to attorneys and to members of the general public.

The court of appeals noted that the Supreme Court's analysis in Mathews,[2] that there comes a point at which the benefits of additional procedural safeguards for the accused individual, and the major goals of Rule 11, "to rid the courts of meritless litigation and to reduce the growing cost and burdensomeness of civil litigation," combine in favor of less extensive procedural safeguards in Rule 11 cases. Otherwise, the court said, the effectiveness of the rule would be undermined.

On the question of fair notice, the en banc decision in Donaldson went on to declare that

> "[t]he existence of Rule 11 itself constitutes a form of notice since the rule imposes an affirmative duty on an attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed; an attorney could not assert that he or she had no notice or knowledge of the standards of conduct that the rule itself provides."

\*   \*   \*   \*   \*   \*

Whether an additional hearing on sanctions should be required, according to the Donaldson court, depends on the nature of the case. Factors to be considered include 1) the circumstances in general; 2) the

---

1. *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir. 1987).

2. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

type and severity of the sanctions under consideration; and 3) the judge's participation in the proceedings, knowledge of the facts, and need for further inquiry. In many situations, the court declared, "the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary." In all cases, however, the accused must be given an opportunity to respond, either orally or in writing, to justify his or her actions. Moreover, the more serious the possible sanctions, both in terms of their absolute magnitude and in relation to the actual expenditures in the case, the more process is due. [Footnotes omitted].

Appellant's brief states that the trial court denied a motion for reconsideration. We have examined the record and find no motion to reconsider the imposition of sanctions. We find a letter sent to the judge on November 4, 1992, after the case was settled, advising of the settlement and stating in part:

> During the status conference at which you imposed the sanction, you invited appellate review of your action. At the time, we refrained from taking any action pending the outcome of the litigation.

> \*    \*    \*    \*    \*    \*

> It is the purpose of this letter to request that the Court either vacate the portion of the minute order which sanctioned my firm, thereby permitting us to collect our fees, or that you sign the attached Order, so that we may seek appellate review through a Special Action. *See Nalbandian v. Superior Court*, 163 Ariz. 126, 786 P.2d 977, 980–981 (App.1989).

Although the letter does explain that appellant's inaction after the June 30, 1992 imposition of sanctions was intentional, pending the outcome of litigation between the parties, we find it insufficient to require the trial court to reconsider its order imposing sanctions and an inadequate substitute for a request for an additional hearing on the imposition of sanctions.

We reject appellant's argument that the sanction was erroneously imposed because the trial court's finding that the motion for summary judgment was a gross abuse of appellant's client was unsupported by any facts. To support this argument, appellant argues that their client and their client's in-house counsel believed that the fees incurred in connection with the motion for summary judgment were entirely legitimate and want to pay appellant for legal services rendered in connection with the motion. Appellant misses the mark with this argument. The day is long gone when an attorney may excuse conduct prohibited by the rules because it conforms to his client's wishes. The violation of the rules of practice was a matter to be resolved between the trial court and the attorney and not between the attorney and his client. From our own independent examination of the record we find the imposition of sanctions against the appellant to be within the sound judicial discretion of the trial court and affirm.

LIVERMORE, P.J., and FERNANDEZ, J., concur.