213 P.3d 346

STATE of Arizona ex rel. Andrew P. THOMAS, Maricopa County Attorney, Petitioner,

v.

The Honorable Larry GRANT, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Lennar Communities Development, Inc.; Sonoran Utility Services, L.L.C., an Arizona Limited Liability Company; Conley D. Wolfswinkel, in his capacity as part owner and manager of Sonoran Utility Services, Real Parties in Interest.

No. 1 CA–SA 09–0082.

Court of Appeals of Arizona, Division 1, Department D.

July 21, 2009.

Andrew P. Thomas, Maricopa County Attorney By Elizabeth B. Ortiz, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

Wright & Associates By Lawrence C. Wright, Ryan P. Dyches, Mesa, Attorneys for Real Parties in Interest Sonoran Utility Services, L.L.C., and Conley D. Wolfswinkel.

Beus Gilbert, P.L.L.C. By Leo R. Beus, Scottsdale, Attorneys for Real Party in Interest Lennar Communities Development, Inc.

## OPINION

JOHNSEN, Judge.

¶ 1 Protective orders typically bar parties to a lawsuit from disseminating information they receive through discovery. At issue in this special action is a sanction order issued against a non-party to a lawsuit that publicly disclosed information it knew to be covered by such a protective order. Because a protective order generally does not bind a non-party and because the non-party in this case did not agree to be bound by the order, we vacate the sanction order.[1]

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 Lennar Communities Development, Inc. and Sonoran Utility Services, L.L.C. were adversaries in a lawsuit in which, at their request, the superior court issued a protective order to ensure the confidentiality of information and documents exchanged during discovery. The protective order was of the standard sort, permitting either side to designate information and documents to be protected and providing that confidential information and documents would be accessible only to parties, counsel and their employees, independent experts and consultants, court personnel and the like. It further provided:

> Confidential information shall be disclosed only in accordance with this Protective Order, and shall not otherwise be disclosed to any other person without either the prior written consent of the producing party or an order by this Court.

> \* \* \*

> Any persons receiving confidential ... information shall not reveal or discuss such information to or with any person who is not entitled to receive such information, except as set forth herein.

¶ 3 The protective order further provided that before disclosure could be made to a permitted recipient, the recipient "must agree in writing to be bound by the terms of this Protective Order." Paragraph 13 of the order, titled "Violation of Protective Order," stated, "A violation of the terms of this Protective Order may subject those bound by it to sanctions by the Court."

¶ 4 Pursuant to the protective order, Sonoran designated as confidential portions of the

---

1. We previously issued an order accepting jurisdiction of the special action petition and granting relief. In this opinion, we explain the reasoning underlying that order.

transcript of a deposition of one of its representatives taken in the lawsuit. After Lennar objected that the confidentiality designations were overbroad, the superior court set a hearing for February 10, 2009.

¶5 It happened that the Maricopa County Attorney's Office and the Maricopa County Sheriff's Office were conducting a separate criminal investigation in which the deponent was a witness. After the County Attorney learned the witness had been deposed, although neither the State nor the County was party to the Lennar/Sonoran litigation, on January 9, 2009, the State filed in that case a "Request for Copy of Deposition." The request stated, "Although the court docket does not clearly reflect the status of the availability of the deposition, the State believes from orders sealing documents relating to the deposition that [it] has been sealed." Sonoran objected in writing to the State's request, arguing, *inter alia,* that the deposition should not be released to the State because the State had not agreed to be bound by the protective order.

¶6 Before the court could rule on the State's request, however, the State acquired the deposition by other means. On January 22, 2009, the Sheriff's Office executed a search warrant of the witness's office and seized the deposition transcript along with other materials.[2] Counsel for the State then appeared at the February 10 hearing noticed for the purpose of resolving the deposition designation issue. After the court overruled Lennar's objections to Sonoran's confidentiality designations, it noted the presence of the State's lawyer and observed that the State had filed a request for a copy of the deposition transcript. The following exchange then took place:

THE COURT: ... What I need to do on the State's motion is to set another date and time for oral argument on this motion, as I didn't—I was unaware of it until this morning.

DEPUTY COUNTY ATTORNEY: Your Honor, I would like to just inform the Court of something that—

THE COURT: Sure.

DEPUTY COUNTY ATTORNEY:—will be relevant to that. At the time I filed the motion, I did not have a copy of the deposition. Even though I wasn't—obviously not a party to the protective order, the parties couldn't disclose that deposition to me. However, we have served a search warrant as part of a criminal investigation on the [witness's] businesses, and we did obtain a copy of the deposition.

However, since this court had issued a protective order, I did not want to do anything inappropriate. So, I directed the Sheriff's Office to hold on to that deposition and not review it until I brought this to the Court's attention.

THE COURT: Okay. That's fine. With respect to the State's request, we need to set a date and time for oral argument on that, as there has been a motion, a response, and a reply. And I didn't know—I was unaware of that until just this morning.

Counsel, how much time would you need for that argument?

DEPUTY COUNTY ATTORNEY: I would say no more than 10 minutes, Your Honor.

OTHER COUNSEL: I agree, Your Honor.

THE COURT: All right. We'll set it for 15 minutes. How soon you want to get before me?

DEPUTY COUNTY ATTORNEY: As soon as possible, Your Honor, because we do have the ongoing criminal investigation as well as a pending criminal matter.

Without anyone suggesting the Sheriff's search might have mooted the State's request for release of the deposition, the Court set the State's request for hearing on March 5.

¶7 In a minute entry issued on February 13, the court recounted the statements by the State's lawyer at the hearing in this manner:

Counsel for the State advises the Court that pursuant to the execution of a search warrant, a copy of [the] deposition has

---

**2.** The record contains no indication of whether the deposition transcript was the primary target of the search warrant or was swept up in a more general search of the witness's files.

been obtained; however, due to the Protective Order issued in this case, counsel has not reviewed the deposition, and will not do so until a ruling has been issued regarding the State's pending motion in this matter, which includes a request to unseal or have the Protective Order lifted. That same day, the State filed a withdrawal of its request for a copy of the deposition. The State explained it had learned at the February 10 hearing that the protective order was "based on the parties' agreement in the case," an agreement to which it was not party. In addition, it noted that because the Sheriff's Office had obtained a copy of the deposition "through lawful means," the request for disclosure was moot.

¶ 8 That was not the end of the matter, however. The *East Valley Tribune* newspaper, which had reported on the ongoing criminal investigation, learned the Sheriff's Office had obtained the deposition. The newspaper filed a public records request for a copy of the deposition with the Sheriff's Office. See Arizona Revised Statutes ("A.R.S.") section 39–121 (2001).[3] The Sheriff's Office released the deposition to the newspaper, which on March 1 published an article recounting portions of the deposition.

¶ 9 Incensed at what it contended was a violation of the protective order, Sonoran on March 3 filed a motion for sanctions against the State for releasing the deposition to the newspaper. Sonoran argued that through counsel, the State had avowed at the February 10 hearing it would abide by the protective order but had breached the order by releasing the deposition. In its response to the sanctions motion, the State argued that contrary to the account of the February 10 hearing contained in the February 13 minute entry, its lawyer had not agreed to refrain from reviewing the deposition until the court

ruled. It argued further that it was not bound by the protective order and that the Sheriff's Office had released the deposition in good faith.

¶ 10 In a written order issued after oral argument, the court found the State's counsel knew of the protective order. The court did not find the State consented to be bound by the order; instead, it apparently concluded that knowledge of the order, by itself, was sufficient to bind the State to the terms of the order. The court held the State had violated the order "by having the information in that deposition disseminated."[4] The court ordered all copies of the deposition returned and directed that the deposition "shall not be used by anyone for any purpose." It also granted Sonoran's request for attorney's fees as a sanction. Sonoran subsequently filed an application seeking $8,227 in attorney's fees as a sanction for the State's breach of the protective order.[5]

## SPECIAL ACTION JURISDICTION

¶ 11 The State filed a petition for special action to obtain relief from the court's sanction order. Sonoran argues we should decline jurisdiction because particularly now that the underlying litigation has been dismissed, the State has an adequate and timely remedy by appeal. *See Precision Components, Inc. v. Harrison, Harper, Christian & Dichter, P.C.,* 179 Ariz. 552, 880 P.2d 1098 (App.1993) (appeal of order imposing sanctions on counsel). Nevertheless, we exercise our discretion to accept jurisdiction of the petition because it raises a purely legal issue of first impression that is of statewide importance. *See State ex rel. Miller v. Superior Court,* 189 Ariz. 228, 230, 941 P.2d 240, 242 (App.1997).

3. The record does not disclose how the newspaper learned the Sheriff's Office had obtained the deposition. Nor does it disclose the date of the newspaper's public records request to the Sheriff.

4. The State argues on appeal that sanctions were improper because the Sheriff's Office released the deposition without the knowledge or consent of the County Attorney's Office. Because of the manner in which we resolve the matter, we need

not address that issue. Nor need we address the issue of whether a protective order to which a governmental entity is a party might permit the government to decline to disclose documents in response to a request pursuant to A.R.S. § 39–121.

5. Sonoran and Lennar by this time had settled their lawsuit; the sanctions issue was the only one that remained in the case.

## DISCUSSION

¶ 12 The general rule is that a court order does not bind a non-party to the litigation in which the order is entered. For example, in the context of judgments, "[i]t is a basic principle of law that a person who is not a party to an action is not bound by the judgment in that action." Restatement (Second) of Judgments ("Restatement") § 62 cmt. a (1982). *See* Ariz. R. Civ. P. 65(h) (injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order"); *see also Taylor v. Sturgell,* — U.S. ——, - —, 128 S.Ct. 2161, 2167, 171 L.Ed.2d 155 (2008) (disapproving doctrine of preclusion by "virtual representation" and holding that prior judgment in a case to which a person was not a party did not bar the person from maintaining a second lawsuit). As Judge Learned Hand wrote regarding the scope of an injunction:

> [N]o court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court.

*Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 832–33 (2d Cir.1930).

¶ 13 Sonoran argues a protective order such as that at issue here binds all who are aware of it. It contends a non-party that comes into possession of information it knows is covered by a protective order is bound by the order not to disseminate the information just as a party to the litigation would be bound. Sonoran offers no authority to support this proposition, however, and the rule it advocates flies in the face of the Restatement's "basic principle" that a judgment binds only the parties to the litigation. In the circumstances presented here, when a non-party has come into possession of protected information through a means outside the litigation, a protective order does not prevent the non-party from disseminating the information. *See Tavoulareas v. Washington Post Co.,* 111 F.R.D. 653, 660–62 (D.D.C.1986) (protective order does not prevent non-party from disseminating protected information that otherwise comes into "the public domain"); *Roman Catholic Diocese of Lexington v. Noble,* 92 S.W.3d 740, 742 (Ky. 2002) (newspaper's publication of information contained within records sealed by court order does not constitute contempt when newspaper did not obtain information from court records or through court process); *see also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (party subject to protective order is not precluded from disseminating "protected" information that party obtained other than through discovery); *In re Rafferty,* 864 F.2d 151, 155 (D.C.Cir.1988) (protective order may not restrict party's use of information obtained before the litigation began); *Int'l Prods. Corp. v. Koons,* 325 F.2d 403, 408 (2d Cir.1963) (court may not bar party from disseminating information obtained independent of discovery).

¶ 14 As the Restatement explains, there are three types of exceptions to the general rule that a judgment does not bind a non-party. Restatement § 62, cmt. a. First, under certain circumstances, a non-party may be bound by a judgment entered in a litigation in which a party represented the non-party. Restatement § 62 cmt. a (citing Restatement §§ 41, 42) (e.g., trustee or other fiduciary, class representative); *but see Taylor,* 128 S.Ct. at 2167–68 (under federal common law, limiting so-called "virtual representation" doctrine). Second, a person "in one of a variety of pre-existing legal relationships with a party may be bound by a judgment affecting that party." Restatement § 62, cmt. a (citing Restatement §§ 43–44, 52, 57–58) (e.g., predecessor/successor-in-interest, bailee/bailor, indemnitor/indemnitee). Third, a non-party may be bound by "the judgment in an action when he is involved with it in a way that falls short of becoming a party but which justly should result in his being denied

opportunity to relitigate the matters previously in issue." Restatement § 62 cmt. a (citing Restatement §§ 37, 39–40) (allowing use of one's name as a party to mislead opposing litigant, assuming control of litigation and agreeing to be bound by adjudication between others).

¶ 15 Only the third exception might apply here. Sonoran argues the State effectively agreed to be bound by the protective order by "intervening" in the litigation to seek disclosure of the deposition transcript and by its counsel's words at the February 10 hearing. But the State did not "intervene" in the Sonoran/Lennar litigation. It filed no motion pursuant to Arizona Rule of Civil Procedure 24 seeking to join the lawsuit as a party. And, although the Restatement provides that a non-party by its conduct may "justifiably induce" parties to a litigation to understand the non-party will be bound, *see* Restatement § 62 cmt. b, that cannot be the case here, when the State formally withdrew its request that the court grant it a copy of the sealed deposition.

¶ 16 The question then is whether the State otherwise agreed to be bound by the protective order. The relevant Restatement provision is section 40, which states that one "who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." Such an agreement may be express or implied. Restatement § 40 cmt. a.

¶ 17 As noted above, like many protective orders, the order in this case allowed the parties to disclose confidential information to certain permitted recipients, but only after the recipients agreed in writing to be bound by the protective order. The State plainly did not expressly consent in that manner to be bound by the protective order. Nor does the record demonstrate that the State in some other manner expressly agreed to be bound. Notwithstanding the court's observations in its February 13 minute entry about what the State's attorney said during the February 10 hearing, the transcript of that hearing demonstrates that the State did not expressly consent to be bound by the protective order.

¶ 18 To the contrary, as the excerpts recounted above demonstrate, there was an unfortunate misunderstanding between the court and counsel for the State arising from their brief exchange at the February 10 hearing. The minute entry reflects the court's understanding that counsel had represented that she would not "review" the deposition "until a ruling [was] issued" on the State's motion for release of the deposition. Even beyond that, the court observed during oral argument on Sonoran's sanctions motion that the State's counsel "left this Court with a clear impression, the clear impression, that she was going to hold in abeyance any action until this Court had an opportunity to review it and have a hearing on it." But the State's counsel gave no such assurances. According to the transcript of the hearing, although she told the court that she had "directed the Sheriff's Office to hold on to that deposition and not review it until I brought this to the Court's attention," she made no representation about what the State (or the Sheriff's Office) would do or not do with the deposition after the hearing.

¶ 19 Sonoran contends the State impliedly consented to be bound by the protective order. It points to the exchange at the February 10 hearing and the fact that at that hearing, the State's counsel acceded to the setting of an oral argument on the State's request for disclosure, as if acknowledging that even though the State had come into possession of the deposition by other means, the court retained some authority over the State's use of the deposition. Moreover, Sonoran argues, having received the February 13 minute entry that recounted the court's understanding that its counsel had made certain assurances, the State did nothing to disabuse the court or the parties of that notion.

¶ 20 The Restatement analyzes implied consent in a situation in which a non-party may elect to be bound by another's litigation rather than initiate an independent action:

> While a party may agree to refrain from exercising his right to a day in court in return for being spared the burden of active litigation, no such agreement should

be inferred except upon the plainest circumstances. In ascertaining whether such an agreement is to be inferred, however, it is relevant to consider the closeness of the interests of the persons involved, whether they were represented by the same or collaborating counsel, whether opportunity existed for the person to participate as a party in the first action, whether the person asserted to have made the agreement could invoke benefits of the judgment in the other action should its outcome favor his position, and what representations were made to the court concerning the relation between the actions.

Restatement § 40 cmt. b.

¶ 21 Analyzed against the Restatement factors, we cannot conclude the circumstances here made "plain" that having obtained the deposition transcript outside the litigation, the State impliedly consented to be bound by the protective order in its use of the deposition. Sonoran does not argue the State is somehow linked to any party in the underlying litigation; obviously the State was represented by separate counsel. The other listed factors concern whether the non-party has elected to be bound by a judgment in another case rather than initiate a litigation of his own. Those factors might have applied if the State had pursued its request for release of the deposition: Had the court granted the State's request for a copy of the deposition, the State in exchange might have consented to certain restrictions on its use of the transcript. But the State withdrew its request that the court order the deposition be released. Having received the deposition by other means, the State did not consent thereby to be bound by the protective order.[6]

¶ 22 The Supreme Court addressed a similar issue in the context of a protective order in *Seattle Times*. The newspaper litigant in that case objected to a protective order that forbade it from publishing information it received in discovery. In upholding the order, the Court observed that a protective order "prevents a party from disseminating only that information obtained through use of the discovery process" and that a party subject to the order "may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." *Seattle Times*, 467 U.S. at 34, 104 S.Ct. 2199. Although the State was a nonparty to the litigation here, the same principle applies. As a general proposition, the protective order would not limit the State's use of the deposition because the State came into possession of the deposition through a means outside the litigation. That being the case, although the State initially asked the court to order the deposition be released, we cannot infer the State impliedly consented to be bound by the protective order after it withdrew that request.[7]

¶ 23 Although we conclude the protective order did not restrict the State's use of the deposition, it is regrettable that the misunderstandings related above were not corrected before information in the deposition became public knowledge. After invoking the authority of the court to obtain the deposition in the underlying litigation, the State properly informed the court when it received the deposition by other means. The problem arose from the exchange at the February 10 hearing that followed counsel's announcement about the Sheriff's search. Apparently believing incorrectly that the State was bound by the protective order even though it had come into possession of the deposition from a source outside the litigation, counsel for Sonoran failed to ask the State to refrain from disseminating the deposition and failed to seek any temporary order restraining such dissemination. The court, also apparently

---

6. The propriety of the search warrant by which the State obtained the deposition is not before us. *Compare In re Zyprexa Injunction,* 474 F.Supp.2d 385 (E.D.N.Y.2007) (sanctions imposed on those who conspired with expert witness who was bound by protective order; conspirators publicly disclosed information covered by the protective order).

7. Sonoran argues that because the State obtained the deposition by virtue of a court-ordered search warrant, it did not receive it "through means independent of the court's processes." To the contrary, we understand the Supreme Court in *Seattle Times* to have been referring to a "means independent" of the underlying litigation, not a "means independent" of any other litigation or court process.

believing incorrectly that the protective order bound the State, failed to make any explicit order of any kind concerning the State's possession of the deposition.

¶ 24 Finally, when it received the February 13 minute entry reciting the court's mistaken belief that its counsel had assured the court that it would do nothing with the deposition pending the upcoming hearing, the State was put on notice of the confusion. Nevertheless, although the State on February 13 withdrew its request for a copy of the sealed deposition, it unfortunately failed to alert the court, Lennar or Sonoran of the mistake and (we must assume) failed to direct the Sheriff's Office to secure the deposition pending resolution of the misunderstanding. The better course would have been for the State to call the issue to the attention of the court so that any legal issues arising from the State's acquisition of the deposition could have been resolved before the transcript was released to the newspaper. All this being said, however, our conclusion remains that the State was not bound by the protective order.

## CONCLUSION

¶ 25 Because the State was not bound by the protective order and acquired the deposition by means other than through the underlying litigation, the protective order did not bar the State from disclosing the deposition. Therefore, and for the reasons set forth above, we vacate the superior court's order and direct the court to dismiss Sonoran's application for attorney's fees.

CONCURRING: ANN A. SCOTT TIMMER, Chief Judge, and PATRICIA A. OROZCO, Judge.