NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

DAMON G. FIORI, *Petitioner/Appellant*,

*v.*

JAMIE K. LANINI-FIORI, *Respondent/Appellee*.

No. 1 CA-CV 18-0121 FC
FILED 2-5-2019

Appeal from the Superior Court in Maricopa County
No.  FC2017-050024
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED**

COUNSEL

Arizona Family Law Solutions P.L.C., Scottsdale
By Melissa Weiss-Riner, James E. Riner
*Counsel for Petitioner/Appellant*

Schmillen Law Firm, P.L.L.C., Scottsdale
By James R. Schmillen
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

---

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**J O N E S**, Judge:

¶1        Damon Fiori (Father) appeals from a decree of dissolution awarding Jamie Lanini-Fiori (Mother) sole legal decision-making authority, child support, and attorneys' fees, as well as a separate post-decree order sanctioning Father's unreasonable conduct.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 2013, the parties had a child (Child) and were married.[1] Father also has three children from prior relationships.  Father filed for divorce in February 2017, but the parties continued living together in the marital residence until a physical altercation in March that caused Mother's face to become badly bruised and swollen.  Father was arrested and charged with domestic violence/assault.  Mother obtained an order of protection granting her exclusive use of the residence.  Both parents requested temporary sole legal decision-making authority over Child; Mother cited the alleged physical abuse, and Father cited Mother's history of alcohol abuse and recent arrest for driving under the influence.

¶3        After the temporary orders hearing, the family court awarded Mother temporary sole legal decision-making authority, finding significant domestic violence occurred and Father failed to rebut the statutory presumption against awarding joint legal decision-making authority.  *See* Ariz. Rev. Stat. (A.R.S.) § 25-403.03.[2]  The court ordered both parties to undergo weekly random alcohol testing, appointed a best-interests

---

[1]        "We view the facts in the light most favorable to sustaining the family court's ruling."  *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 522, ¶ 1 n.1 (App. 2007) (citing *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005)).

[2]        Absent material changes from the relevant date, we cite the current version of rules and statutes.

attorney (BIA), and awarded Father eight hours of supervised parenting time per week.

¶4            At a status conference in June 2017, the family court accepted the parties' stipulation that Father have unsupervised parenting time. In August, Mother filed an *ex parte* emergency motion for supervised parenting time after learning from Father's former girlfriend that Father had recently abused one of his other children. The court issued an emergency temporary order for supervised parenting time with Child and set a hearing. At that hearing, the parties and BIA agreed Father should continue to have supervised parenting time with Child. In December, the parties reached a partial settlement whereby Father agreed to quitclaim his interest in the marital home to Mother in exchange for an equalization payment.

¶5            Trial was held in January 2018. Both parties objected to the other's untimely disclosure of witnesses and exhibits, but the family court allowed the evidence, including testimony from Father's ex-wife and a former girlfriend regarding prior domestic abuse against them and another child. The court also received evidence of the parties' relative financial resources.

¶6            After taking the matter under advisement, the family court awarded sole legal decision-making authority to Mother and supervised parenting time to Father and ordered Father to pay $1,207.13 in monthly child support. The court also ordered Father to pay Mother $20,000 in attorneys' fees after finding Father knowingly presented false claims in the litigation.

¶7            Thereafter, Mother filed a petition to enforce the settlement agreement, alleging Father failed to timely comply with an order directing him to execute documents necessary to transfer the marital home to Mother. Although Mother advised the family court of Father's eventual compliance before a hearing could be held, rendering the petition moot, the court nonetheless found Father's "obstreperous and discourteous actions and statements" during the course of the court's attempt to resolve the issue warranted a sanction. The court thus ordered Father to pay Mother an additional $8,850 in attorneys' fees.

¶8            Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1)-(2).

## DISCUSSION

### I.      Trial Proceedings

**¶9**          Father argues the family court erred when it allowed Mother to call two witnesses that were not previously disclosed.  We review an order denying a request for discovery sanctions for an abuse of discretion. *See Hunnicutt Constr., Inc. v. Stewart Title & Tr. of Tucson Tr. No. 3496*, 187 Ariz. 301, 307 (App. 1996) (citing *Reed v. Mitchell & Timbanard, P.C.*, 183 Ariz. 313, 320 (App. 1995)).

**¶10**          Pursuant to Arizona Rule of Family Law Procedure 76.1(h), a witness not listed in a pretrial statement is not permitted to testify at trial "unless the court orders otherwise for good cause."  However, before imposing an evidentiary sanction in a custody matter, the family court must consider the effect of the sanction on the court's ability to determine the best interests of the child at issue.  *Hays v. Gama*, 205 Ariz. 99, 103-04, ¶¶ 22-23 (2003).[3]

**¶11**          Here, the family court determined Mother's witnesses' testimony was relevant to Child's best interests and found good cause for allowing them to testify.  Indeed, the witnesses provided highly relevant evidence regarding a pattern of domestic violence unavailable elsewhere in the record, and in the context of a custody dispute, allowing them to testify was not an abuse of discretion.  *Cf. Johnson v. Provoyeur*, 245 Ariz. 239, 244-45, ¶¶ 16, 20 (App. 2018) (finding no abuse of discretion in excluding untimely disclosed evidence when the evidence did not have "an 'especially significant effect' on [the court's] ability to determine the child's best interests" and the court admitted other relevant evidence supporting Mother's claims") (quoting *Hays*, 205 Ariz. at 103, ¶ 22).

**¶12**          Father separately argues his due process rights were violated because he was unprepared to examine the undisclosed witnesses and

---

[3]      We find Father's attempt to distinguish *Hays* unpersuasive. Although *Hays* considered a factually distinguishable scenario — the exclusion of expert witness testimony and records as a sanction for a parent's violation of court orders regarding the minor child's therapy — its principles remain sound:  the family court must consider all relevant factors when resolving a custody dispute, and a sanction that impacts the court's access to information relevant to best interests should be resorted to only where lesser sanctions are either impracticable or have been attempted and proven unsuccessful.  *Hays*, 205 Ariz. at 103-04, ¶¶ 22-23.

generally given insufficient time to present his case. The family court has broad discretion to "impose reasonable time limits on all proceedings or portions thereof and [to] limit the time to scheduled time." *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014). Time limits are unreasonable if they deprive the litigants of due process — that is, the opportunity to be heard at a meaningful time, in a meaningful manner, through the presentation of evidence and testimony and confrontation of adverse witnesses. *Id.* at 468-69, ¶¶ 21-22, 24. Thus, the court must remain "sufficiently flexible in its allotment of time to preserve due process." *Id.* at 469, ¶ 22. The court is not, however, required to "indulge inefficient use of time by parties or their counsel." *Id.* Whether a party is afforded adequate due process presents a question of law reviewed *de novo*. *Savord v. Morton*, 235 Ariz. 256, 260, ¶ 16 (App. 2014) (quoting *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999)).

¶13 The family court did not act unreasonably here. Each party received, without objection, sixty-five minutes to present a case. Our review reveals Father presented the evidence he wished to provide; he completed his presentation within the allotted time, did not object to the time granted, and did not ask for a continuance or any additional time. The record also shows Father chose to focus on Mother's alcohol use to the exclusion of other issues. Although Father suggests the court could have allowed him fifteen additional minutes when trial ended at 4:45 p.m., he never asked to use this time. Nor does Father proffer what additional information he would have elicited had he been given more time. Under these circumstances, we find no abuse of discretion or due process violation. *See Nicaise v. Sundaram*, 244 Ariz. 272, 277, ¶ 15 (App. 2018) (finding no due process violation where a party made a strategic decision regarding her use of trial time and then failed to request additional time or make a proffer of evidence).

## II.    Domestic Violence

¶14 Father argues the family court erred by adopting the significant-domestic-violence finding from the temporary order without allowing him to present additional evidence at trial to rebut the presumption against awarding joint legal decision-making authority. Father contends this constitutes error because, by statute, temporary orders "do[] not prejudice the rights of the parties or of any child that are to be adjudicated at the subsequent hearings in the proceeding." A.R.S. § 25-315(F). But Father's argument is not supported by the record.

¶15 The family court did not deprive Father of an opportunity to present additional evidence regarding domestic violence. Although Father

claimed his police interview refuted Mother's claims of domestic violence, he did not offer the recording or any other additional evidence to support this assertion, choosing instead to simply reiterate his version of events.

¶16        Father argues the family court should have considered that he was ultimately acquitted of the criminal charges arising out of the March 2017 incident.  However, the charges were not resolved until after the court issued its findings of fact and conclusions of law in this case.  Although Father referenced the acquittal in motions for new trial and reconsideration, he did not supplement the record with any documentation to support his assertions and did not appeal from the denial of those motions.  The court cannot be faulted for failing to consider what Father did not provide.

¶17        In any event, an acquittal of the criminal charges would not mandate reversal of the legal decision-making and parenting time orders; while criminal charges must be proved beyond a reasonable doubt, *see State v. Hunter*, 142 Ariz. 88, 89 (1984), the family court's finding of significant domestic violence only requires proof by a preponderance of the evidence, *see* A.R.S. § 25-403.03(A).  Furthermore, substantial evidence that Father committed domestic violence against his first wife, his ex-girlfriend, and another child supports the finding of domestic violence.

¶18        Nor did the family court simply adopt findings from its temporary orders.  Although the final order referred to testimony from the temporary orders hearing, the court rejected Father's version of the March 2017 incident after finding he was not credible[4] and concluded "Father intentionally, knowingly, and/or recklessly caused injuries to both Mother and [another child]."  Contrary to Father's contentions otherwise, these acts qualify as acts of domestic violence for purposes of A.R.S. § 25-403.03.  *See* A.R.S. §§ 25-403.03(A) (directing the family court to consider "domestic violence pursuant to [A.R.S.] § 13-3601"); 13-3601(A) (defining "domestic violence" to include an assault against a spouse, former spouse, or child); 13-1203(A) (defining "assault" to include "[i]ntentionally, knowingly or recklessly causing any physical injury to another person").  Moreover, these

---

[4]        Father argues the family court erred in finding Father's version of the events irrelevant.  The comment to which Father refers was made during a status hearing after the court entered its temporary order.  Father's denial of domestic violence was, in fact, irrelevant to that proceeding, and the court's correct statement regarding the relevance does not amount to reversible error.

findings are supported by the record and support the conclusion that significant domestic violence occurred.

## III.  Child Support

**¶19**        Father argues the family court erred in calculating his child support obligation because it: (1) improperly included income from his second job, (2) failed to attribute to Mother funds she received from her parents, and (3) failed to account for Father's support of other children.  We accept the factual findings underlying a child support calculation unless they are clearly erroneous.  *See Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009) (citing *McNutt v. McNutt*, 203 Ariz. 28, 30, ¶ 6 (App. 2002)).  However, we draw our own legal conclusions from those facts and review the interpretation of statutes, including Arizona's Child Support Guidelines (Guidelines), A.R.S. § 25-320 app., *de novo*.  *Engel*, 221 Ariz. at 510, ¶ 21 (citations omitted).

**¶20**        Generally, "[a] parent should have the choice of working additional hours through overtime or at a second job without increasing the child support award."  Guidelines § 5(A).  The family court may, however, include income from a second job "if that income was historically earned from a regular schedule and is anticipated to continue into the future" and does not "require an extraordinary work regimen."  *Id.*  The Guidelines do not "entitle a parent who continues to work the same schedule as he or she consistently worked during the marriage to a *decreased* support obligation."  *McNutt*, 203 Ariz. at 31-32, ¶ 14.

**¶21**        Substantial evidence supports the family court's decision to include income from Father's independent consulting business as part of his gross income.  The parties' tax returns reflect that Father has earned income from this business since 2014, and his Affidavit of Financial Information lists $20,183 in additional income from his consulting business for the first five months of 2017.  The evidence reflects that Father has historically and recently earned this additional income, and we find no error.

**¶22**        A parent's gross income may also include "recurring gifts" from family members.  Guidelines § 5(A).  Although Father alleged Mother co-owns a multi-million-dollar bank account that she failed to disclose and receives funds from her parents to pay for living expenses, he did not present any evidence to support these assertions.  Nor did Father file any pretrial motions seeking to compel disclosure of this information.  The

record thus reflects that Father failed to prove that Mother had additional income.

¶23 Finally, the Guidelines provide for an adjustment to a parent's gross income to account for the parent's support of children "who are not the subject of this particular child support determination." *See* Guidelines § 6. This includes a dollar-for-dollar deduction for "[t]he court-ordered amount of child support for children of other relationships, if actually being paid" as well as an adjustment "determined by a simplified application of the guidelines" for a child "covered by a court order for whom they are the primary residential parent." Guidelines § 6(B)-(C).

¶24 The record reflects that Father has three minor children from other relationships. He does not pay support for his two oldest children and is not entitled to any adjustment. Father is the primary residential parent of a third child and, pursuant to the Guidelines, was entitled to a deduction of $1,042. That adjustment is properly reflected in the child support order. We find no error.

## IV. Attorneys' Fees

### A. Fees Awarded in Decree

¶25 Father argues the family court erred in awarding Mother attorneys' fees in the decree because the evidence does not indicate a disparity in income. We review an award of attorneys' fees for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014) (citing *Mangan v. Mangan*, 227 Ariz. 346, 352, ¶ 26 (App. 2011)).

¶26 Here, the family court awarded fees pursuant to A.R.S. § 25-415(A). This section authorizes an award of attorneys' fees as a sanction "if the court finds that the litigant has . . . [k]nowingly presented a false claim [regarding the factors relevant to legal decision-making or a parties' domestic violence or substance abuse] with knowledge that the claim was false." A.R.S. § 25-415(A)(1).

¶27 The family court found Father knowingly presented at least seven false claims subject to sanction under A.R.S. § 25-415(A)(1). Father does not dispute these findings. He does not cite any authority suggesting his comparative wealth is relevant to the imposition of sanctions under this section, and neither its plain language nor its apparent purpose to dissuade dishonest behavior suggest such consideration is required. Father fails to establish any abuse of discretion.

### B. Fees Related to Enforcement of Settlement Agreement

**¶28** Father argues the family court erred in awarding Mother fees as a sanction under Arizona Rule of Family Law Procedure 92 because he was not given an opportunity to respond or be heard. We review the court's imposition of sanctions for an abuse of discretion. *See Hmielewski v. Maricopa Cty.*, 192 Ariz. 1, 4, ¶ 13 (App. 1997). Father's argument fails on two fronts.

**¶29** First, the sanction was not imposed pursuant to Rule 92, which authorizes the family court to impose a civil sanction for non-compliance with a court order "[a]fter hearing . . . testimony and evidence." Rather, the family court found the contempt petition was moot and imposed a sanction pursuant to its inherent power to regulate attorney misconduct. *Precision Components, Inc. v. Harrison, Harper, Christian & Dichter, P.C.*, 179 Ariz. 552, 555 (App. 1993). The conduct described in the court's order is not contested on appeal and supports the sanction.

**¶30** Second, the record reflects Father had an opportunity to, and did, file a detailed response to the family court's order and findings in support of the sanction. And although Father contends the court prevented him from responding to Mother's fee application, the relevant order specifically provided Father with ten days to file his objection, which Father failed to do. On this record, we find no abuse of discretion.

### CONCLUSION

**¶31** The family court's orders are affirmed.

**¶32** Both parties request an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 25-324(A). Having considered the parties' relative financial resources and the reasonableness of their positions, *see* A.R.S. § 25–324(A), we award Mother an amount of reasonable attorneys' fees to be determined upon compliance with ARCAP 21(b). As the prevailing party, Mother is also awarded her costs on appeal. *See* A.R.S. § 12-341.



AMY M. WOOD • Clerk of the Court
FILED: AA