8 P.3d 407

In re the Marriage of Deborah M.
MEAD, Petitioner–Appellant,

v.

James C. HOLZMANN, Respondent–
Appellee.

No. 1 CA–CV 99–0640.

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 29, 2000.

Jones & Rosenberg By Kenton D. Jones, Prescott, Attorneys for Petitioner–Appellant.

Chester R. Lockwood, Jr., Prescott Attorney for Respondent–Appellee.

## OPINION

TIMMER, Judge.

¶ 1 Deborah M. Mead appeals from the trial court's order establishing the amount of child support she must pay to James C. Holzmann for the care of their children. We must determine whether the trial court erred in failing to impute a pre-tax income to Holzmann, whose income consists solely of non-taxable disability insurance benefits, for purposes of calculating his monthly gross income. We conclude that the trial court did not err by its calculation of Holzmann's gross income under section 4(a) of the Arizona Child Support Guidelines [1] ("Guidelines"), but we remand the case to the trial court for consideration of the issue under section 17 of the Guidelines.

### Facts and Procedural Background

¶ 2 Upon the dissolution of the parties' marriage on November 13, 1995, Mead was awarded custody of their three minor children and Holzmann was ordered to pay child support. After Holzmann petitioned for a change of custody in 1998, the parties stipulated that he would have primary custody of the children and Mead would pay the amount of child support, if any, ordered by the trial court.

¶ 3 Holzmann is not employed, but instead receives a non-taxable monthly disability insurance payment of $6,656.00. Mead earns $2,642.00 each month as a legal secretary and must pay taxes on that income. Mead ar-

gued to the trial court, as she does on appeal, that section 4(a) of the Guidelines requires that a "pre-tax" income of $9,842.00 be imputed to Holzmann for purposes of comparing his gross monthly income with Mead's gross monthly income before determining their proportional shares of the total child support obligation. Otherwise, Mead argued, Holzmann would receive a windfall because of the tax-free status of his income. If a pre-tax income is imputed to Holzmann, Mead's child support obligation would decrease. The trial court rejected Mead's argument, compared Holzmann's actual monthly income to Mead's gross monthly income and ruled that Mead must pay Holzmann $265.00 per month for child support. [2]

¶ 4 Mead timely filed her notice of appeal and we have jurisdiction to consider it pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994). We review the trial court's interpretation of the Guidelines *de novo* as a question of law. *See Burnette v. Bender*, 184 Ariz. 301, 304, 908 P.2d 1086, 1089 (1995) (whether capital gains must be included in gross income under section 4(a) of the Guidelines presents a question of law to be reviewed *de novo*).

## DISCUSSION

### A. 'Gross Income' under section 4(a) of the Guidelines

¶ 5 The Guidelines establish a standard of support for children consistent with their reasonable needs and the ability of parents to pay by providing a formula for calculation of child support based, in significant part, on the parties' gross incomes. [3]

1. The Arizona Child Support Guidelines, adopted by the Arizona Supreme Court for actions filed after October 31, 1996, are found in the Appendix to Arizona Revised Statutes Annotated section 25–320 (2000).

2. The trial court further ordered that Mead must pay Holzmann an additional $200.00 per month to reduce an existing arrearage. Mead does not challenge this portion of the trial court's order.

3. Specifically, the Guidelines require the trial court to calculate a combined adjusted gross income for the parties by adding their individual

gross incomes, which may be subject to enumerated adjustments. *See* Guidelines, § 6. Using this figure and the number of children involved, the court then consults a schedule to determine the parties' basic child support obligation. *See id.* § 7. This sum is then modified to account for various costs, such as medical insurance and child care, to arrive at the parties' total child support obligation. *See id.* § 8. After accounting for support offered to the child during visitation periods, the court then orders the non-custodial parent to pay child support in an amount equal to his or her proportional share of the total

*See* Guidelines, §§ 1, 6–11. Section 4(a) of the Guidelines provides that 'gross income' "may include, *but is not limited to,* income from salaries, wages, ... [and] disability insurance benefits." (Emphasis added.)

¶ 6 Mead argues that the non-limitation language in section 4(a) of the Guidelines justifies imputation of a pre-tax income to Holzmann to calculate his 'gross income,' and the court was required to do so in order to avoid an unjustified result. She claims that comparing Holzmann's monthly, *non-taxable* income to her monthly, *taxed* income essentially equates Holzmann's 'net income' to her 'gross income,' thereby unfairly decreasing the total amount of support available to the children and increasing her proportional share of the total child support obligation. She further contends that tax must be imputed to Holzmann because the schedule of basic child support obligations, consulted by the trial court after calculation of the parties' adjusted gross incomes in order to arrive at the parties' combined child support obligation, considers the impact of income taxes. *See* Guidelines, §§ 4(h), 7. Thus, argues Mead, unless tax is imputed to Holzmann, he will receive a "windfall" as taxes are not deducted from his disability income.

¶ 7 Holzmann counters that section 4(a) does not, on its face, require an imputation of taxes to account for non-taxable disability benefits and imposing such a requirement would unnecessarily complicate the calculation of gross income. According to Holzmann, any adjustments to a child support calculation must be made pursuant to section 17 of the Guidelines, which mandates deviation from the Guidelines under specified circumstances. He argues that deviation under that section was not warranted in this case.

¶ 8 In interpreting the Guidelines, we apply the same rules of construction as are used in construing statutes. *See State ex rel. Dep't of Econ. Sec. v. McEvoy*, 191 Ariz. 350, 353, ¶ 13, n. 4, 955 P.2d 988, 991 (1998). Thus, to determine the supreme court's intent under section 4(a) of the Guidelines, we look first to its language. *See Calmat of*

*Ariz. v. State ex rel. Miller*, 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993). We further interpret section 4(a) in conjunction with other provisions of the Guidelines, *see Goulder v. Arizona Dep't of Transp., Motor Vehicle Div.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (1993), and in light of the Guidelines' overall purpose. *See Bryan v. Riddel*, 178 Ariz. 472, 477, 875 P.2d 131, 136 (1994).

¶ 9 We disagree with Mead that the non-limitation language contained in section 4(a) means the trial court must impute a pre-tax income to a party, like Holzmann, who receives non-taxable income. The plain meaning of the words in section 4(a) simply allows the trial court to consider other sources of income for purposes of determining gross income. *See Parada v. Parada*, No. CV–97–0520–PR, 196 Ariz. 428, 999 P.2d 184 (2000) (" 'Statutory construction applies generally accepted meanings to challenged words or terms.' ") (citation omitted). Avoidance of taxation is not a *source* of income, but is, instead, a cost savings. Moreover, section 4 specifically notes that 'gross income,' as used in the Guidelines, "do[es] not have the same meaning as when [it is] used for tax purposes." Thus, mere use of the term 'gross income' fails to evidence an intent by the supreme court that non-taxation of certain income should be accounted for in the calculation.

¶ 10 Mead's argument is further undercut by reference to other provisions of the Guidelines. *See Goulder*, 177 Ariz. at 416, 868 P.2d at 999. Section 4(a) states that "[s]easonal or fluctuating income shall be annualized." Section 4(e) specifically allows the court to impute income and expenses to a non-working or partially employed parent under certain circumstances. Section 5 provides for adjustments to gross income calculated under section 4(a) if a party pays spousal maintenance and support for other children. By contrast, section 4(a) is silent regarding imputation of a pre-tax income to parents who receive non-taxable disability benefits, even though such benefits are listed

child support obligation. *See id.* § 11. This share is calculated by dividing the total child support obligation between the parents in pro-

portion to their adjusted gross incomes. *See id.* § 9.

as sources of income. In light of the supreme court's specification of situations in which gross income can be imputed or adjusted, its failure to provide for imputation of a pre-tax income to recipients of disability benefits further supports a conclusion that such tax avoidance is not intended to be "other income" under section 4(a). *See Arizona Bd. of Regents v. State ex rel. State of Ariz. Pub. Safety Retirement Fund Manager Adm'r*, 160 Ariz. 150, 157, 771 P.2d 880, 887 (1989) ("Where the legislature has specifically used a term in certain places within a statute and excluded it in another place, courts will not read that term into the section from which it was excluded.") (citation omitted); *see also State Compensation Fund v. Superior Court*, 190 Ariz. 371, 375, 948 P.2d 499, 503 (1997) ("The provision of one exemption in a statute implicitly denies the existence of other unstated exemptions.") (citation omitted).

¶ 11 Additionally, we agree with Holzmann that adopting Mead's interpretation of section 4(a) would unduly complicate calculation of gross income, thereby potentially frustrating the trial court's ability to consistently and efficiently establish child support obligations. *See* Guidelines, § 1(b) (one purpose of Guidelines is "[t]o make child support orders consistent for persons in similar circumstances"); *see also Boutz v. Donaldson*, 128 N.M. 232, 991 P.2d 517, 526 (1999) ("one of the driving forces behind the child support guidelines is efficiency and ease of administration"). If section 4(a) is interpreted as requiring the imputation of a pre-tax income to Holzmann, the court should similarly consider the differing tax treatment afforded to capital gains, personal injury awards, interest generated from tax-free municipal bonds, unemployment and workers' compensation benefits, and a host of other income sources. As a New Mexico court stated, when addressing a similar issue, "[w]e should avoid 'introducing such complexity into the process' without a clear indication of legislative in-

tent." [4] *Boutz*, 991 P.2d at 526 (citation omitted); *accord In re Marriage of Fain*, 794 P.2d 1086, 1088 (Colo.Ct.App.1990) ("Selection of gross income as the starting point for a determination of child support greatly simplifies application of the guideline in most cases. It substantially reduces the need for computations and the potential for error, by court personnel, attorneys, and parties and can be applied with limited information.").

¶ 12 Based on the foregoing, we hold that section 4(a) of the Guidelines does not require or allow the trial court to impute a pre-tax income to a party who receives non-taxable disability benefits when calculating that party's gross income. Accordingly, the trial court did not err by declining to impute to Holzmann a pre-tax income when determining Holzmann's gross income under section 4(a) of the Guidelines.

**B. Deviation under section 17 of the Guidelines**

¶ 13 We are mindful that a failure to account for a parent's untaxed income may effect an unfair result for both the children and the fully-taxed parent. Rather than imputing a pre-tax income in the calculation of gross income under section 4(a), however, we agree with Holzmann that the trial court must make any necessary adjustments under section 17 of the Guidelines. *See* Guidelines, § 3 ("[I]f application of the [G]uidelines would be inappropriate or unjust in a particular case, the court shall deviate from the guidelines in accordance with Section 17.").

¶ 14 Section 17 directs the trial court as follows:

a. The court shall deviate from the guidelines, i.e., order support in an amount different from that which is provided pursuant to these guidelines, after considering all relevant factors, including those set forth in Arizona Revised Statutes section

---

4. As Mead points out, the impact of income taxes is considered in the schedule of basic child support obligations. *See* Guidelines, § 4(h). The Guidelines provide, however, that the schedule "is based on net income and converted to gross income for *ease of application.*" *See id.* (emphasis added). By acknowledging the need for facile operation, this provision supports a conclusion that the trial court must calculate gross income under section 4(a) by simply totaling moneys received from any source without making adjustment for any unique tax treatment of such income.

25–320, and applicable case law, only if *all* of the following criteria are met:

1. Application of the guidelines is inappropriate or unjust in the particular case,

2. The court has considered the best interests of the child in determining the amount of a deviation. A deviation that reduces the amount of support is not, by itself, contrary to the best interests of the child,

3. The court makes written findings regarding 1 and 2 above,

4. The court shows what the order would have been without the deviation, and

5. The court shows what the order is after deviating.

Thus, section 17 provides the trial court with the flexibility to deviate from the Guidelines when unique circumstances of a particular case so demand.[5] Moreover, it is prudent to make any needed adjustments *after* application of the Guideline calculations as the court can then assess the impact of any atypical situation, such as the existence of a significant amount of tax-free income, in context with other features of the case. Finally, because the amount of non-taxed income may be insignificant, having no impact on the final child support order, judicial economy favors making necessary adjustments in some cases under section 17 rather than accounting for every disparity in a section 4(a) calculation.

¶ 15 It appears from its order that the trial court believed it was constrained from making any adjustments to the child support order due to the tax-free status of Holzmann's income because section 4(a) does not provide for imputation of a pre-tax income. No mention is made by the court of its ability to deviate from the Guidelines under section 17. Holzmann argues that Mead was granted generous concessions in the child support order[6] and that any additional adjustments

are therefore unjustified. Holzmann may be correct, but this is a determination that must be made by the trial court with the knowledge that it can consider Holzmann's tax status in determining whether deviations must be made under section 17 of the Guidelines. For this reason, we remand this case to the trial court to consider whether any deviations must be made to the child support order under section 17. We do not intend by this remand to suggest that the trial court must modify its prior order to account for the tax-free status of Holzmann's disability income. We instead hold that if the court determines that application of the Guidelines would be inappropriate or unjust in this case due to the tax-free status of Holzmann's disability income, the court must deviate from the Guidelines in accordance with section 17.

## C. Attorneys' Fees

¶ 16 Both parties request an award of attorneys' fees on appeal. We deny both requests for attorneys' fees on appeal, "deferring this request to the trial court's discretion pending resolution of the matter on the merits." *San Tan Irrigation District v. Wells Fargo Bank,* 313 Ariz. Adv. Rep. 18, 20, ¶ 18 (2000).

## Conclusion

¶ 17 We hold that the trial court did not err by refusing to impute a pre-tax income to Holzmann in calculating his gross income under section 4(a) of the Guidelines. However, because the record reflects that the trial court believed it could not consider the tax-free status of Holzmann's income in entering its child support order, we remand this case. If the court determines on remand that application of the Guidelines would be inappropriate or unjust in this case due to the tax-free status of Holzmann's disability income,

---

5. Although Mead did not invoke section 17 when she asked the trial court to impute a pre-tax income to Holzmann, her failure did not prevent the court from making adjustments under this provision. The Guidelines *mandate* a deviation under section 17 when the failure to do so would result in the imposition of an inappropriate or unjust support order. *See* Guidelines, § 3.

6. The court ordered that Mead may claim all three children as exemptions on her income tax, her visitation credit was arguably enlarged, and Holzmann was ordered to pay one-half of the fee for a special master to facilitate visitation between Mead and her children. These "concessions" do not reflect deviations made under section 17 as they are unaccompanied by the written findings and detailed recitation of any deviation as required under that section.

the court must deviate from the Guidelines in accordance with section 17.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, and RUDOLPH J. GERBER, Judge.