49 P.3d 300

In re the Marriage of Vanessa A. McNUTT, Petitioner–Appellee,

v.

Shane M. McNUTT, Respondent–Appellant.

No. 1 CA–CV 01–0255.

Court of Appeals of Arizona, Division 1, Department D.

June 27, 2002.

Favour, Moore & Wilhelmsen, P.A. By Mark M. Moore, Marguerite A. Kirk, Prescott, Attorneys for Petitioner–Appellee.

Law Offices of Robert L. Frugé, P.C. By Robert L. Frugé, Prescott, Attorney for Respondent–Appellant.

## OPINION

HALL, Judge.

¶ 1 Shane M. McNutt ("Father") appeals the trial court's order that he pay Vanessa A. McNutt ("Mother") $484 per month in child support. He also appeals the court's failure to allocate the federal tax exemption for the parties' minor child. In calculating Father's gross income for child support purposes, the court included all income Father earned from his current sixty-four-hour workweek and also imputed additional income to Father based on his previous eighty-hour workweek.

¶ 2 Interpreting applicable sections of the Arizona Child Support Guidelines ("Guidelines"), Appendix to Arizona Revised Stat-

utes ("A.R.S.") section 25–320 (1996),[1] we conclude that the phrase "full-time employment" may encompass more than forty hours per week if part of a regular schedule. We further conclude, however, that because Father was not working below "full earning capacity" at the time of trial, the trial court erred by attributing additional income to Father based on an eighty-hour workweek. The trial court also erred by failing to allocate the tax exemption. Accordingly, we vacate the trial court's child support order and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 3 After Father and Mother began living together, they had a daughter born in 1995. They married in 1996; Mother filed a petition for dissolution of marriage in July 1999. At all relevant times, Father worked as a caretaker for developmentally disabled clients at one or more residential facilities. In 1993 or 1994, he began working eighty hours per week to enable the parties to purchase a home. His work regimen required him to be on duty for five twenty-four-hour shifts each week, but he was compensated for only sixteen hours per day because he was permitted to sleep the remaining eight hours. In August 1999, shortly after the parties separated, Father reduced the number of hours he worked to sixty-four hours per week consisting of four twenty-four-hour shifts. Although he was still working sixty-four hours per week when the case was tried on December 1, 2000, Father testified that he wanted to further reduce the number of hours he worked to forty-eight hours per week (three twenty-four-hour shifts) to increase the quality of time he spent with the parties' daughter. He testified that he had not yet done so because he would have been unable to pay the temporary family support order of $709 per month, which included $400 for spousal maintenance, if he worked less than sixty-four hours per week.

¶ 4 In addition to his monthly salary, Father also received monthly income from a rental property. However, Father testified without contradiction that he received no net income after paying the monthly mortgage and other expenses, including a ten percent management fee, property tax, insurance, and maintenance. Mother initially testified that she believed that Father received $220 net income per month from the rental home, but later acknowledged that this figure simply reflected the difference between the rent payment and the mortgage and that she did not know how much net income Father actually received after paying the other expenses.

¶ 5 After taking the matter under advisement, the trial court filed a minute entry attributing gross income of $2,840 per month to Father and $1,316 to Mother, and ordered Father to pay Mother $484 per month for child support. The court did not allocate the federal tax exemption for the parties' minor child. The minute entry was reduced to a decree of dissolution from which Father timely appeals.

## STANDARD OF REVIEW

¶ 6 Generally, we review child support awards for an abuse of discretion. *Kelsey v. Kelsey*, 186 Ariz. 49, 53, 918 P.2d 1067, 1071 (App.1996). We "accept the trial court's findings of fact unless they are clearly erroneous," but "draw our own legal conclusions from facts found or implied in the judgment." *Burnette v. Bender*, 184 Ariz. 301, 304, 908 P.2d 1086, 1089 (App.1995). We review de novo the trial court's interpretation of the Guidelines. *Mead v. Holzmann*, 198 Ariz. 219, 220, ¶ 4, 8 P.3d 407, 408 (App.2000).

## DISCUSSION

**I. Gross Monthly Income**

¶ 7 Father contends that the trial court erred by attributing gross monthly income to him based on an eighty-hour workweek be-

---

1. The Guidelines were amended in 2000, but the relevant portions of the sections discussed in this opinion, §§ 4(a), 4(e), and 25, were left unchanged except that § 25 ("Federal Tax Exemption for Dependent Children") was renumbered as § 26 and a party's entitlement to the dependency exemption was further conditioned on that party deriving a tax benefit from claiming the dependency exemption. *See* Appendix to A.R.S. § 25–320 (Supp.2001).

cause: (1) "gross income" under § 4(a) of the Guidelines does not include wages earned from working more than forty hours per week; (2) Father was already employed at "full earning capacity" under § 4(e) of the Guidelines based on his sixty-four-hour workweek; and (3) the child support award unconstitutionally violated his due process and equal protection rights.

¶ 8 In its findings, the trial court stated that it "attributes gross income of $2,840 per month to the father." Both parties agree, and we concur, that the trial court reached this figure by attributing income to Father based on an eighty-hour workweek in combination with net rental income of $220.[2]

## A. Full–Time Employment

■ ¶ 9 Father claims that the court erred in using an eighty-hour workweek because "there is no quantity other than a forty-hour work-week [sic] that is generally associated with full-time employment."

¶ 10 We apply the same rules of construction in interpreting the Guidelines that we use in construing statutes. *Mead,* 198 Ariz. at 221, ¶ 8, 8 P.3d at 409. Because the phrase "full-time employment" is not defined in the Guidelines, we interpret this language "in conjunction with other provisions of the Guidelines and in light of the Guidelines' overall purpose." *Id.* (citations omitted).

¶ 11 The first step in determining the parents' basic child support obligation is to calculate each parent's gross income. *See* Guidelines at § 6. Gross income is defined broadly as

> income from any source.... Seasonal or fluctuating income shall be annualized. Income from any source which is not continuing or recurring in nature need not necessarily be deemed gross income for child support purposes. It is generally not expected that a parent will earn income greater than what would be earned from full-time employment.

*Id.* § 4(a).

¶ 12 Father asserts that any income earned from working more than forty hours per week should be characterized as "overtime" income and excluded from the calculation of a parent's gross income as income "greater than what would be earned from full-time employment." *Id.* He posits that society generally recognizes full-time employment as being limited by the concept of a forty-hour workweek and argues that the Guidelines have implicitly adopted this approach. For support, he cites to the predecessor of § 4(a), which provided in relevant part: "Seasonal, overtime, or fluctuating income shall be averaged. When income from a full-time job is consistent with income during the marriage, income earned as the result of overtime hours or a second job may be disregarded." Guidelines at § 5 (1992).

¶ 13 Thus, before 1996, the definition of gross income permitted the trial court to disregard "income earned as the result of overtime hours or [from] a second job" *only* when the parent earned income from a full-time job consistent with that parent's income during the marriage. *Id.* In 1996, this bias was reversed; now *all* "income greater than what would be earned from full-time employment" is generally not included in a parent's gross income. Guidelines at § 4(a).

¶ 14 Nonetheless, unlike Father, we do not interpret § 4(a) as limiting full-time employment to no more than approximately forty hours per week. First, we are not persuaded by his claim that any time spent working over forty hours per week is necessarily overtime. Overtime is generally defined as "[t]ime beyond an established limit, as: a. Working hours in addition to those of a regular schedule." The American Heritage Dictionary 1293 (3d ed.1992). Father's regular schedule of employment at the time of trial was sixty-four hours per week, not forty. The change in the definition of gross income permits an already fully-employed parent to work extra hours or a second job without thereby incurring an *increased* support obligation. But we do not believe the amended Guidelines entitle a parent who continues to work the same schedule as he or she consis-

---

**2.** At trial, Mother submitted a child support work sheet that listed Father's gross monthly income as $2,840; she testified "his work was $2,600 a month, and the rental brought 220[sic] per month." She was not asked to, and did not, explain the $20 discrepancy.

tently worked during the marriage to a *decreased* support obligation. *Cf. Jensen v. Bowcut*, 892 P.2d 1053, 1057 n. 3 (Utah App. 1995) (stating "this court has previously held that a full-time job can exceed forty hours per week if consistent with the obligee's [sic] prior practice").

¶ 15 Second, as Father correctly observes, the definition of gross income from self-employment contained in § 4(c) of the Guidelines[3] is clearly not limited by any artificial construct of a forty-hour workweek, nor could it be. If we adopted Father's position and construed § 4(a) as imposing an hourly limitation on the amount of earned income generated from full-time hourly employment, we would be fostering a situation in which children of parents with comparable gross incomes would receive inconsistent child support awards depending on the parent's type of employment rather than ability to pay, a result unfair to both children and parents. *See* Guidelines at § 1(b) (one purpose of the Guidelines is "[t]o make child support orders consistent for persons in similar circumstances").

¶ 16 Finally, even if we accept Father's characterization of his work schedule as involving overtime hours, we still disagree with his conclusion that the Guidelines now require the trial court to disregard *all* overtime wages when calculating gross income, regardless of the nature of the overtime. For example, the exclusion of mandatory overtime from a parent's gross income would be inconsistent with the Guidelines' income-sharing approach, in which the support amount is based on the gross income of both parents and is intended to approximate "the amount that would have been spent on the child(ren) if the parents and child(ren) were living together." *Id.* BACKGROUND. Further, rigid application of a forty-hour construct would defeat the goal of establishing a "standard of support for children consistent with [their] needs [ ] and the ability of parents to pay." *Id.* at § 1(a).

¶ 17 We believe the more likely intent of the Guidelines and one that is consistent with the concept of full-time employment, was to generally exclude only non-mandatory or voluntary overtime from gross income. This would ensure that the child support award is based on both parents' regular incomes but leave to each parent the choice of working additional hours—whether overtime or at a second job—without exposing that parent to the "treadmill" effect of an ever-increasing child support obligation. *See, e.g.,* Colo.Rev. Stat. § 14–10–115(7)(I)(C) (2001) (" 'Gross income' includes overtime pay only if the overtime is required by the employer as a condition of employment.").

### B. Full Earning Capacity

¶ 18 A different question, however, is raised by Father's objection to the trial court's attribution of a greater amount of income to him than he was actually earning at the time of trial. Father voluntarily reduced his work schedule from eighty hours per week to sixty-four hours approximately sixteen months before trial, but the trial court nonetheless attributed income to Father based on his previous eighty-hour work schedule. To do so, the trial court necessarily concluded that Father was not working at his full earning capacity. *See* Guidelines at § 4(e) ("If a parent is unemployed or working below full earning capacity, the court may consider the reasons. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a parent up to his or her earning capacity."). Father again asserts, and we again believe incorrectly, that a parent who works forty hours per week is necessarily employed at his or her "full earning capacity." Nonetheless, we conclude that the trial court abused its discretion by finding that Father's full earning capacity was the eighty hours per week he once worked and that he was underemployed at the sixty-four hours per week he was working at the time of trial.

¶ 19 In *Little v. Little*, 193 Ariz. 518, 522, ¶ 11, 975 P.2d 108, 112 (1999), our supreme court adopted an "intermediate balancing test" for trial courts to apply when deciding

---

**3.** "[G]ross income means gross receipts minus ordinary and necessary expenses required to produce income."

whether to use actual income or earning capacity in making a support determination when a non-custodial parent voluntarily reduces his or her income by terminating employment. Among the factors the trial court should consider are the financial impact on the children, the reasonableness of the parent's decision, and whether the decision was made in good faith. *Id.* at 522–23, ¶¶ 12–14, 975 P.2d at 112–13.

¶ 20 Father, however, did not terminate his employment. Instead, even after reducing his work schedule, he was still working a sixty-four-hour workweek. Thus, cases such as *Little*, in which the obligor parent quit his job to attend law school full-time, and others that involve parents who either quit their jobs entirely, accept lower-paying employment, or work only part-time are distinguishable. Although the *Little* balancing test is still applicable here, trial courts should generally not attribute additional income to a parent that would require an extraordinary work regimen. *See* Lewis Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine*, 29 Conn. L.Rev. 647, 690–91 (1997) (discussed in *Little*, 193 Ariz. at 521–22, ¶¶ 8–10, 975 P.2d at 111–12) (suggesting that parent's reduction of work schedule by declining available overtime or a second job should be controlling unless it "results in a substantial adverse impact on the health or welfare of the beneficiaries of the support order"). *See also,* Michigan Child Support Formula Manual § II(I) (imputation not appropriate when parent leaves a second job or refuses overtime but is still employed thirty-five or more hours per week).

¶ 21 We find instructive *In re Marriage of Simpson*, 4 Cal.4th 225, 14 Cal.Rptr.2d 411, 841 P.2d 931 (1992), in which the California Supreme Court answered the question "whether 'earning capacity' should, as a general matter, properly be measured by the work regimen engaged in by the supporting spouse during the marriage even if such regimen was extraordinary, requiring excessive hours or an onerous work schedule." *Id.* at 936. The court concluded that the concept of "earning capacity" should be measured by the standard of an objectively reasonable work regimen rather than one requiring excessive hours. *Id.* The determination of what constitutes a reasonable work regimen depends "upon all relevant circumstances, including the choice of job available within a particular occupation, working hours, and working conditions." *Id.* at 937.

¶ 22 Here, the trial court did not articulate any reasons for attributing sixteen additional hours to Father's weekly schedule and the record reveals no reasonable basis for doing so. Therefore, we conclude that the trial court abused its discretion on this issue. *See Little*, 193 Ariz. at 520, ¶ 5, 975 P.2d at 110 ("An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision.") (citation omitted).

### C. Father's Due Process and Equal Protection Rights

¶ 23 Father also argues that the trial court's application of the Guidelines violated his due process and equal protection rights by infringing on his fundamental right "to decide the terms of his own private employment and, therefore, how he uses his personal time." Father cites no authority for his apparent claim that he has a fundamental right to have his child support obligation based on a forty-hour workweek, and we know of none. Nor is Father being treated differently from other divorced parents because in all cases, a parent's actual, regular, and continuous income is the basis for the child support award. *See Schenek v. Schenek*, 161 Ariz. 580, 580, 780 P.2d 413, 413 (App.1989) ("As long as the guidelines are equitably applied and provide for discretion to suit the particular circumstances of each case, we believe they pass constitutional muster."). Thus, Father's constitutional objection lacks any merit.

### D. Rental Income

¶ 24 Because we conclude that the trial court committed reversible error in its attribution of earned wages, we need not consider Father's claim that the evidence was insufficient to support a finding that he received any gross income from the rental property.

34

On remand, Father may present documentary evidence, such as receipts and ledgers, to support his claim that he received no net income from the rental property.

## II. Federal Tax Exemption for Dependent Child

¶ 25 Father argues that the trial court abused its discretion by failing to allocate the federal tax exemption. Section 25 of the Guidelines provides that in cases where the "child support obligation is at least $1,200 per year, there *should* be an allocation of the federal tax exemptions applicable to the minor children which as closely as possible approximates the percentages of support being provided by each of the parents." (Emphasis added.)

¶ 26 The word "should" is most commonly used to express obligation or duty. *See* The American Heritage Dictionary 1670 (3d ed.1992). We. conclude that, based on the intent of the Guidelines and the interest of parents in the allocation of the federal tax exemption, the word "should" as used in § 25 of the Guidelines is mandatory rather than discretionary. *See Lincoln v. Lincoln,* 155 Ariz. 272, 276, 746 P.2d 13, 17 (App.1987) (holding that the trial court abused its discretion by refusing to allocate the dependency exemption). Thus, the trial court abused its discretion by failing to allocate the federal tax exemption, and we direct the trial court to allocate the exemption on remand.

## III. Attorneys' Fees on Appeal

¶ 27 Finally, both parties request an award of attorneys' fees on appeal pursuant to A.R.S. § 25–324 (1999). Neither party took an unreasonable position on appeal, and the parties' finances seem relatively comparable. Accordingly, neither party is awarded attorneys' fees on appeal.

## CONCLUSION

¶ 28 We vacate the child support order and remand for further proceedings consistent with this opinion.

CONCURRING: E.G. NOYES, JR., Judge and WILLIAM F. GARBARINO, Judge.