NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

LAURIE E. CURTO, *Petitioner/Appellee*,

*v.*

ANTHONY W. CURTO, *Respondent/Appellant.*

No. 1 CA-CV 14-0615 FC
FILED 9-22-2015

Appeal from the Superior Court in Maricopa County
No. FC2002-005685
The Honorable Gerald Porter, Judge, Retired

**VACATED AND REMANDED**

COUNSEL

Hallier & Lawrence, PLC, Phoenix
By Andrea Christine Lawrence, Christy C. Brown
*Counsel for Petitioner/Appellee*

McCulloch Law Offices, Tempe
By Diana McCulloch
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Maurice Portley and Chief Judge Michael J. Brown joined.

---

**G E M M I L L**, Judge:

¶1 Anthony Curto ("Father") appeals from the family court's order modifying child support. Because the family court erred in determining the gross income of Laurie Curto ("Mother"), we vacate and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Father and Mother divorced in 2004. Pursuant to the divorce decree, Mother and Father shared joint legal decision-making of their two children, and Mother was the primary residential parent. In 2012, the children chose to reside with Father. Thereafter, Father petitioned to modify legal decision-making, parenting time, and child support.[1]

¶3 The parties resolved the issues of legal decision-making and parenting time prior to trial, leaving the issue of child support for the court to determine. At the hearing, the parties disagreed on the extent to which an inheritance received from Mother's parents should be included in Mother's gross income for child support purposes. Taking the inheritance into consideration, the court ordered Mother to pay $1116.53 per month in child support from July 1, 2013 to May 31, 2014 and $1302.64 per month thereafter.[2] The court also awarded Father $2500 in attorney fees and costs. By separate order, the court resolved the division of fees each parent would pay for the court-appointed advisor. Father then filed this appeal.

---

[1] The children turned eighteen in April 2015. The presumptive termination date for child support was May 31, 2015. *See* Ariz. Rev. Stat. § 25-320 app. § 4 (2015) ("Guidelines").

[2] The court also added the amount of Mother's earned income and attributed to Mother the value of rent-free living. The parties have not challenged these additions on appeal.

## DISCUSSION

¶4 Father argues the family court abused its discretion in calculating Mother's income and awarding attorney fees pursuant to Arizona Revised Statutes ("A.R.S.") section 25-324. We review the family court's order establishing the amount of child support for an abuse of discretion. *In re Marriage of Robinson & Thiel*, 201 Ariz. 328, 331, ¶ 5, 35 P.3d 89, 92 (App. 2001). In determining whether the family court abused its discretion, we consider whether an error of law was committed in the process of reaching the discretionary conclusion. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455-56, 652 P.2d 507, 528-29 (1982). We review the court's application of the Arizona Child Support Guidelines de novo as a question of law. *Mead v. Holzmann*, 198 Ariz. 219, 220, ¶ 4, 8 P.3d 407, 408 (App. 2000).

## I. Mother's Gross Income

¶5 Pursuant to A.R.S. § 25-320(A), a court may order parents to pay child support in "an amount reasonable and necessary" for the support of their children. The Guidelines establish a standard for child support based on "the reasonable needs of children and the ability of parents to pay." A.R.S. § 25-320 app. § 1(A) (2015)[3] ("Guidelines"). The goal of that standard is to approximate "the amount that would have been spent on the children if the parents and children were living together." *Id.*

### A. Calculation of Mother's Gross Income

¶6 The calculation of child support begins with a determination of each parent's gross income. Guidelines § 5(A). The term "gross income" is broadly defined as

> *[I]ncome from any source, and may include, but is not limited to*, income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits (subject to Section 26), worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, recurring gifts, prizes, and spousal maintenance.

*Id.* (emphasis added).

---

[3] Absent material revisions after the relevant dates, we cite the current versions of statutes unless otherwise indicated.

¶7 After her parents passed away, Mother received an inheritance in the form of individual retirement accounts ("IRAs"). At the hearing, Mother testified that she regularly transferred money from the IRAs into a personal bank account to supplement her earned income. After the hearing, the family court determined that Mother's withdrawals of "inherited funds" were "taxable monies" and utilized the amounts withdrawn from the IRAs in determining mother's gross income.

¶8 On appeal, neither party argues that the court erred in considering withdrawals from the IRAs as part of Mother's gross income. Rather, Father argues that the court made a "math mistake" when it determined that Mother's average monthly withdrawals for the year 2013 amounted to $10,426.41.

¶9 This court has explained that gross income for child support purposes is "the actual money or cash-like benefits received by the household which is *available for expenditures*." *Cummings v. Cummings*, 182 Ariz. 383, 385, 897 P.2d 685, 687 (App. 1994) (emphasis added). In *Cummings*, we held that consistent gifts from grandparents should be included in calculation of gross income for child support purposes. *See id.* at 386, 897 P.2d at 688. We explained that § 25-320 does not "specify or limit the items that the court may consider in determining a parent's 'financial resources.'" *Id.* (quoting A.R.S. § 25-320). More recently, this court held that principal withdrawn from a short-term retirement account "falls within the Guidelines' broad definition of gross income," reasoning that "categorizing these monies as income is both consistent with the overall purposes of the Guidelines and the best interests of the child." *Milinovich v. Womack*, 236 Ariz. 612, 616, ¶ 15, 343 P.3d 924, 928 (App. 2015).

¶10 In *Milinovich*, we acknowledged two decisions from other jurisdictions holding that money received from an inheritance may be included in gross income. *Id.* at 617, ¶ 15, 343 P.3d at 929 (*citing In re A.M.D.*, 78 P.3d 741, 746 (Colo. 2003) (holding that inheritance monies saved or invested are not included as gross income for purposes of calculating child support, but monies used by the beneficiary "as a source of income either to meet existing living expenses or to increase the recipient's standard of living," including the drawdown of principal, "should be included in that year's gross income"); *Gardner v. Yrttima*, 743 N.E.2d 353, 356 (Ind. App. 2001) (explaining that many states "consider an inheritance as income available for purposes of calculating child support")). These holdings are consistent with this court's definition of gross income as "actual money" received by a household that is "available for expenditures." *Cummings*, 182 Ariz. at 385, 897 P.2d at 687.

¶11      We agree that the court did not abuse its discretion when it considered the portion of the inheritance Mother withdraws monthly as gross income.  Our review of the record confirms that those funds were received by the household and became available for expenditures, and "[t]here is no evidence to suggest that these monies were spent on any other investments," such as Mother's investment home in Payson.

¶12      In calculating Mother's income from the IRAs, however, the court did not utilize the gross withdrawals Mother made from her inherited funds.  Rather, it appears that the court used the figures presented in Mother's demonstrative trial exhibits, which adjusted the withdrawals from Mother's IRAs by subtracting federal and state tax withholdings.  The court, therefore, used *net* income, rather than gross income, to calculate the monthly average.[4]  *See, e.g.*, *Brevick v. Brevick*, 129 Ariz. 51, 52, 628 P.2d 599, 600 (App. 1981) (defining "[n]et income from employment" as "gross earnings less . . . Federal and State withholding").  The Guidelines prescribe "gross income" as the starting point in calculating child support. Guidelines § 5.  Accordingly, the trial court did not follow the Guidelines.

¶13      The court also made deductions from Mother's gross income that are not contemplated by the Guidelines.  After determining that Mother withdrew a monthly average of $10,426 of inherited funds, the court deducted from that amount: (1) $1500 per month for medical, dental and vision insurance[5]; and (2) $2900 per month for Mother's attorney fees and costs "for having to maintain the action before the Court."

¶14      Although section six of the Guidelines authorizes "adjustments" to gross income for spousal maintenance and child support for other children, it does not permit adjustments for a parent's health insurance or attorney fees.  Guidelines § 6.  Accordingly, the family court

---

[4] According to her 1099s for that year, Mother withdrew a total of $160,797 from the IRAs in 2013.  The 1099s also reflect state and federal tax withholdings of $35,683 on those withdrawals, resulting in after-tax income of $125,117.  When divided by twelve, the after-tax income yields the figure of monthly average of $10,426 utilized by the court.

[5] The vast majority of this $1500 reflected the cost of Mother's own health insurance.  Section Nine of the Guidelines provides that the cost of the children's, but not a parent's, medical dental and/or vision insurance coverage should be added to the basic child support obligation.  Guidelines § 9(A).

did not follow the Guidelines when it applied these deductions to Mother's income.

## B.      No Explanation for Deviation from Guidelines

¶15      Deviation from the Guidelines can be appropriate in some cases, however.  Section 20 of the Guidelines provides the court with "flexibility to deviate from the Guidelines when unique circumstances of a particular case so demand." *Mead*, 198 Ariz. at 223, ¶ 14, 8 P.3d at 411.  The court shall deviate from the Guidelines when the following criteria are met:

1. Application of the guidelines is inappropriate or unjust in the particular case,

2. The court has considered the best interests of the child in determining the amount of a deviation. A deviation that reduces the amount of child support paid is not, by itself, contrary to the best interests of the child,

3. *The court makes written findings regarding 1. and 2. above in the Child Support Order, Minute Entry or Child Support Worksheet,*

4. *The court shows what the order would have been without the deviation,* and

5. The court shows what the order is after deviating.

Guidelines § 20(A) (emphasis added).

¶16      Here, the family court did not satisfy the Section 20(A) criteria.  The order modifying child support did not contain any findings to support why the court did not include as Mother's monthly income the pre-tax or "gross" amount that she withdrew from her inherited funds, rather than the after-tax amount.  Likewise, the order did not reflect that the court had "considered the best interests of the child[ren]" in making deductions from gross income for Mother's health insurance and attorney fees.  Finally, the order did not show what the monthly child support would have been without the deductions in Mother's favor.  *See Milinovich*, 236 Ariz. at 618, ¶ 20, 343 P.3d at 930 ("[A] deviation from any provision of the Guidelines requires a trial court to make written findings, including a showing of what the child support order would have been without the deviation.").

¶17        Because the court did not follow the Guidelines or explain why it did not, we vacate the child support order and remand for reconsideration of Mother's income.  In remanding, we acknowledge the family court's authority to deviate from the Guidelines if appropriate, but emphasize the court must make findings and explain any deviation as required by Section 20.  *See, e.g., Gallegos v. Gallegos*, 174 Ariz. 18, 21-22, 846 P.2d 831, 834-35 (App. 1992) (directing deviation from the Guidelines in a case involving income received from a personal injury settlement by a father, who was a quadriplegic, and needed significant income to meet his medical expenses).

## II.  Attorney Fees

¶18        A trial court has discretion in awarding attorney fees and costs.  *Davis v. Davis*, 9 Ariz. App. 49, 54, 449 P.2d 66, 71 (1969).  The family court exercised its discretion by awarding Father $2500 in attorney fees and costs.  We find no abuse of discretion, and affirm the family court's award of fees.

¶19        Mother and Father both request an award of attorney fees and costs on appeal in accordance with A.R.S. § 25-324.  Having reviewed the record, the position of the parties on appeal and efforts to resolve their dispute short of the appeal, we exercise our discretion and deny both requests for fees on appeal.  However, as the prevailing party, Father is entitled to recover his taxable costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

¶20        For the foregoing reasons, we vacate the family court's order modifying child support and remand for reconsideration upon recalculation of Mother's gross income.  Upon remand, the court may also consider anew any additional fee request by either parent in accordance with A.R.S. § 25-324.



Ruth A. Willingham · Clerk of the Court
FILED: ama