NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MARCEL L. HYKES, *Petitioner/Appellant,*

*v.*

SIOBAN AMANDA PEAK, *Respondent/Appellee.*

No. 1 CA-CV 16-0465 FC
FILED 4-27-2017

Appeal from the Superior Court in Maricopa County
No.  FC2009-007480
The Honorable Joseph P. Mikitish, Judge

**AFFIRMED**

COUNSEL

Marcel L. Hykes, Protected Address
*Petitioner/Appellant*

Ashley Donovan Law PLLC
By Ashley Donovan, Tempe
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

---

**B E E N E**, Judge:

¶1        Marcel Hykes ("Father") appeals from the superior court's order establishing legal decision-making, parenting time, and child support.  Finding no abuse of discretion, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Although never married, Father and Sioban Peak ("Mother") had a son together in 2004 and lived together for approximately five years thereafter.  After they separated in 2009, Mother moved out of state, taking the son without Father's knowledge or consent.

¶3        Father then filed a petition to establish paternity, parenting time, and child support.  As the superior court noted, Father's petition was also a "*de facto* petition to prevent Mother's relocation out of state with the child."  Following a hearing, the court ordered Mother to return the son to Arizona.  Since the son's return, the parties have petitioned the court multiple times to modify legal decision-making, parenting time, and/or child support.  In 2012, the court entered an order providing for joint legal decision making authority and approximately equal parenting time.

¶4        In 2015, Father relocated to the state of Washington for work.  Mother petitioned to modify legal decision-making, parenting time, and child support, seeking sole legal decision-making and requesting that Father have parenting time during school breaks.  Father counter-petitioned seeking joint legal decision-making and proposing a year-on-year-off parenting plan, which would begin with the son residing in Washington with Father for the first year.

¶5        After a hearing, the superior court denied Father's request to relocate the son to Washington and made Mother the primary residential parent.  The court awarded joint legal decision-making but gave Mother final legal decision-making authority over all issues.  The order gave Father parenting time for part of each summer, all of fall break, and half of winter

break.  Finally, the order directed Father to pay child support of $480 per month.

¶6         Father appealed from the superior court's rulings, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(2) (2017).[1]

## DISCUSSION

¶7         On appeal, Father challenges the superior court's decision regarding legal decision-making, parenting time, and child support.  We review the court's rulings for an abuse of discretion.  *See Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013) (involving child custody and parenting time); *Fuentes v. Fuentes*, 209 Ariz. 51, 54, ¶ 10 (App. 2004) (involving child support).  "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision."  *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) (internal quotations omitted).

¶8         We note that Father has failed to provide this Court with a transcript from the evidentiary hearing.  *See* ARCAP 11(c)(1) (requiring the appellant to "order transcripts of superior court proceedings not already in the official record that the appellant deems necessary for proper consideration of the issues on appeal.").  In the absence of a transcript, we presume the evidence at the hearing "was sufficient to sustain the trial court's conclusion."  *Fletcher v. Fletcher*, 137 Ariz. 497, 498 (App. 1983).

## I.    Parenting Time/Relocation

¶9         Father first challenges the superior court's decision to make Mother the primary residential parent and its corresponding denial of his relocation request.  Father claims that because he was "looking to continue equal parenting time . . . on a yearly basis," he did not "bear the usual burden of proof for relocation."[2]  We disagree.

---

[1]        Absent material revision after the relevant date, we cite the current version of a statute unless otherwise stated.

[2]        Mother failed to file an answering brief, which we could regard as a confession of error.  *See Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994).  Because the son's best interests are at issue, we decline to do so.  *See In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 2 (App. 2002).

¶10 Section 25-408 governs relocation and sets forth the process by which the superior court "may allow a parent who shares parenting time or legal decision-making to relocate the child." *Murray v. Murray*, 239 Ariz. 174, 176, ¶ 6 (App. 2016). Under this statute, the superior court must determine whether relocation is in the child's best interests by applying the factors enumerated in § 25-408(I).[3] *See* A.R.S. § 25–408(G), (I) (2017). "The burden of proving what is in the child's best interests is on the parent who is seeking to relocate the child." A.R.S. § 25–408(G). In this case, Father's proposed modification to parenting time required relocation; therefore, Father had the burden of proving that relocation was in his son's best interests. *See* A.R.S. § 25–408(G).

¶11 Although we do not have a transcript from the hearing, we know that the superior court heard testimony from both parties. In addition, we know the court reviewed the Court-Appointed Advisor Report ("Report"), which concluded that the son should remain at his

---

[3] The factors are:

1. The factors prescribed under § 25-403.
2. Whether the relocation is being made or opposed in good faith and not to interfere with or to frustrate the relationship between the child and the other parent or the other parent's right of access to the child.
3. The prospective advantage of the move for improving the general quality of life for the custodial parent or for the child.
4. The likelihood that the parent with whom the child will reside after the relocation will comply with parenting time orders.
5. Whether the relocation will allow a realistic opportunity for parenting time with each parent.
6. The extent to which moving or not moving will affect the emotional, physical or developmental needs of the child.
7. The motives of the parents and the validity of the reasons given for moving or opposing the move including the extent to which either parent may intend to gain a financial advantage regarding continuing child support obligations.
8. The potential effect of relocation on the child's stability.

A.R.S. § 25–408(I) (2017).

current school, in Arizona, to maintain stability. After considering the proper § 25–408(I) factors, the court determined that Father had "not met his burden of showing that moving to Washington" was in the son's best interests. The Report supported this conclusion, and we presume the testimony did as well. *See State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16 (App. 2003) (holding that when a party fails to produce "transcripts or other documents necessary" for the appellate court "to consider the issues raised on appeal," the appellate court assumes that the missing portions support the superior court's findings and conclusions); *Fletcher*, 137 Ariz. at 498.

**¶12** Accordingly, the superior court did not abuse its discretion in making Mother the primary residential parent and denying Father's request to relocate the son.

## II. Legal Decision-Making

**¶13** Father next argues that because he "provided insurance for the child without pause or lapse since 2009," he should have final decision-making authority when it comes to health care.[4]

**¶14** In making decisions regarding legal decision-making and parenting time, the superior court must consider the best interest factors set forth in A.R.S. § 25–403(A) (2017); *see also Reid v. Reid*, 222 Ariz. 204, 209, ¶ 20 (App. 2009) ("[T]he most important issue in custody disputes is the best interests of the child[.]"). Section 25–403(B) requires the court to make "specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child."

**¶15** Here, the superior court complied with § 25–403 and made written findings regarding all relevant factors. Importantly, the court noted that although "[i]n the past, the parties have cooperated in making decisions" regarding the son, "[t]hey have little or no ability to do so now." Evidence in the record supports this conclusion. The court also remarked that "[t]he parties now live in different states, which makes joint legal decision making logistically difficult." Ultimately, the court awarded joint legal decision-making but gave Mother, who is the primary residential parent, "final legal decision-making authority over all issues." Although Father contends he should have been awarded final decision-making

---

[4] Father appears to concede that "the parent who has the child primarily would be best to have final decision making authority in respect to education."

authority over health-care issues, the court's decision to grant that authority to Mother was not improper, given that the child will be living primarily with Mother.

¶16        On this record, we cannot say the superior court abused its discretion.

### III.    Child Support

¶17        Father also challenges the superior court's calculation of child support, arguing that Mother provided "misinformation and conflicting information" regarding child care costs. He further argues that he should not have to pay "back support" to the date of Mother's petition.

¶18        The superior court calculated child support in compliance with the Arizona Child Support Guidelines ("Guidelines"), which "establish a standard of support for children consistent with their reasonable needs and the ability of parents to pay by providing a formula for calculation of child support based, in significant part, on the parties' gross incomes." *Mead v. Holzmann*, 198 Ariz. 219, 220, ¶ 5 (App. 2000); *see also* A.R.S. § 25–320 app., § 1. The court relied on Father's 2015 tax return for his gross monthly income and attributed income of $12 per hour to Mother, who reported earning considerably less.[5] From Mother's adjusted gross income, the court subtracted child care expenses of $70 per month, although her affidavit of financial information reflected costs of $100 per month. We presume the hearing testimony supported that reduction. *See Fletcher*, 137 Ariz. at 498.

¶19        Modifications of child support are "effective on the first day of the month following notice of the petition for modification[.]" A.R.S. § 25–503(E) (2017); *see also* A.R.S. § 25–327(A) (2017). In this case, Mother filed notice of her petition on January 14, 2016. Accordingly, the superior court properly selected February 1, 2016, as the effective date for the modification.

¶20        We find no abuse of discretion in the superior court's calculation of child support or its determination of the effective date for the modification.

---

[5]     Father's 2015 tax return reflected annual gross income of $51,129.00, which divided by twelve equates to $4,260.75 per month. Mother reported income of $400 per month.

## IV.     Protected Address

¶21     Finally, Father challenges the superior court's denial of his request for a protected address. After Mother filed her petition, Father filed a request for protected address, stating that he was assaulted by Mother's "friends or acquaintances" several years earlier during an exchange of their son. The court initially granted Father's request "until further hearing of the court."

¶22     Arizona Rule of Family Law Procedure 7(A) provides:

> Any person filing an initial or post-judgment petition, motion or response, whose address is not known to the other party and who reasonably believes that physical or emotional harm may result to the person or a minor child if the person's address is not protected from disclosure, may request the court to designate that party's address as protected[.]

After granting a protected address, the superior court may later revoke that status "after a hearing and upon a finding that there is no reasonable belief that physical or emotional harm may result to the person with the protected address." Ariz. R. Fam. L. P. 7(B)(2).

¶23     After the evidentiary hearing on Mother's petition, the superior court found:

> Upon further consideration, and the distance from [Mother's] home, the Court finds there is insufficient evidence to support the granting of [Father's] protected address in the Court system. Any altercation alleged from years past is not likely to affect [Father].

The court's finding is supported by the record. The alleged assault that formed the basis for Father's request occurred in Glendale, Arizona in 2012.[6] Father now resides in Washington. We cannot say the court erred in denying Father's request for a protected address.

---

[6]     There is no indication in the police report that the assailant was Mother's friend or acquaintance.

## CONCLUSION

**¶24** For the foregoing reasons, we affirm the decision of the superior court.



AMY M. WOOD • Clerk of the Court
FILED: AA