NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

DALYNNE DOLE, *Petitioner/Appellee,*

*v.*

PHILLIP DOLE, *Respondent/Appellant.*

No. 1 CA-CV 21-0665 FC
FILED 6-14-2022

Appeal from the Superior Court in Maricopa County
No. FC2018-005549
The Honorable Bradley H. Astrowsky, Judge

**VACATED IN PART AND REMANDED**

APPEARANCES

Dalynne Dole, Gilbert
*Petitioner/Appellee*

Phillip Dole, Gilbert
*Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

H O W E, Judge:

¶1 Phillip Dole ("Father") appeals the trial court's order modifying a decree dissolving his marriage with Dalynne Dole ("Mother"). For the following reasons, we vacate the child support portion of the modification order and remand for proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2 Father and Mother divorced in October 2019 after a 24-year marriage that produced five children. After an appeal of the dissolution decree, Father had to pay Mother $3,000 a month in spousal maintenance and $1,469 a month in child support for 17-year-old J.D., 15-year-old K.D, and 12-year-old E.D. *See Dole v. Dole*, No. 1 CA-CV 19-0833 FC, 2020 WL 7392988 (Ariz. App. Dec. 17, 2020) (unpublished). The court, using a single worksheet, based the child-support obligation on Father's having, on average, 75 days of parenting time with the three children. The court also allocated federal and state tax benefits for J.D. and E.D. to Father and the benefits for K.D. to Mother. The court was silent in the dissolution decree, however, on how the cost of the children's extra-curricular activities would be paid.

¶3 A year later, Father moved to modify the dissolution decree, requesting, in part, equal parenting time and modification of his child-support obligations because J.D. had become emancipated in spring 2020, ending his obligation to pay child support for her. Mother objected and requested that the court order Father to pay his proportional share of the cost of E.D.'s gymnastics.

¶4 At trial, Father testified that he and Mother had never agreed that the payment for the children's extra-curricular activities was part of their separation agreement. He said that he would agree to divide the cost of any extracurricular activities only if he agreed to the activity "in writing" before the costs were incurred. He claimed, though, that he did not agree to pay for E.D.'s gymnastics because he was financially unable to do so.

Mother testified that she had paid for all of E.D.'s gymnastics costs and did not offer evidence that Father had agreed to share the cost.

¶5            The trial court denied Father's request for equal parenting time and decreased Father's parenting time with K.D. In calculating Father's new child support obligation after J.D.'s emancipation, the trial court prepared separate worksheets for each child. For E.D., it found that Father had 140 days of parenting time with a support obligation of $527 a month. For K.D., it found that Father had 19 days of parenting time with a support obligation of $899 a month. It therefore calculated Father's total obligation under the two-worksheet methodology as $1,426 and found that Father had been making $43 overpayments since June 1, 2020. The trial court also found that Father had agreed to pay the costs of extra-curricular activities, including the cost of E.D.'s gymnastics. In addition, the court modified its tax benefit allocation, giving Father the federal and state tax benefits for K.D. from 2021 through 2023 and for E.D. for 2024 and 2025. Mother received the benefits for E.D. from 2021 through 2023.

¶6            Father timely moved for a new trial/modification of a judgment under Family Rule of Procedure ("Rule") 83 because, among other things, the trial court erred in calculating child support, finding that Father agreed to share in the cost of E.D.'s gymnastics, and allocating the tax benefits so that he did not receive a benefit in proportion to his income contribution. The trial court denied the motion for "no good cause appearing." Father timely appealed and Mother did not file an answering brief.

**DISCUSSION**

¶7            Father appeals the trial court's modification order and the denial of his Rule 83 motion. He contests that the trial court erred in (1) using two child support worksheets instead of one, (2) requiring him to share the cost of E.D.'s gymnastics, and (3) allocating the tax benefits such that he did not as a practical matter receive a pro-rata benefit. Child support awards are reviewed for an abuse of discretion. *Sherman v. Sherman*, 241 Ariz. 110, 112 ¶ 9 (App. 2016). This court accepts the family court's factual findings unless clearly erroneous, *Little v. Little*, 193 Ariz. 518, 520 ¶ 5 (1999) (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)) (affirm unless "devoid of evidentiary support"), but reviews de novo the court's conclusions of law and interpretation of the Arizona Child Support Guidelines ("Guidelines"), *Nia v. Nia*, 242 Ariz. 419, 422 ¶ 7 (App. 2017).

## I.      The Trial Court Erred in Using Two Child Support Worksheets.

**¶8**            Father argues that the trial court's use of two worksheets to determine his child support obligation violated the Guidelines. The supreme court adopted the Guidelines to "provide procedural guidance in applying the substantive law" for establishing and modifying child support obligations, A.R.S. § 25–320; Guidelines § I[1]; *Milinovich v. Womack*, 236 Ariz. 612, 615 ¶ 8 (App. 2015), and to establish consistent child support standards that adapt to the children's needs and their parents' ability to pay, *Engel v. Landman*, 221 Ariz. 504, 513 ¶ 38 (App. 2009).

**¶9**            The Guidelines' plain language is the most reliable indicator of the supreme court's intent. *Milinovich*, 236 Ariz. at 615 ¶ 10. This court interprets the Guidelines' relevant section, however, "in conjunction with other provisions of the Guidelines and consistent with their overall purpose." *Birnstihl v. Birnstihl*, 243 Ariz. 588, 591 ¶ 8 (App. 2018). A court may deviate from the Guidelines only if it finds in writing that applying them is inappropriate or unjust and that the deviation is in the child's best interests. Guidelines § IX(B)(3). A trial court's mere compromise on any individual figure incorporated in the Guidelines calculation is not a deviation, however. Guidelines § IX(E)(2). When applying the Guidelines, the children's best interests is paramount. *Milinovich*, 236 Ariz. at 615 ¶ 8.

**¶10**            When parents have multiple children with different parenting plans and only one parent has more than half the parenting time with all the children, the trial court prepares only one worksheet. Guidelines § V(F). Under the one-worksheet method, the court must add up all the parenting days for each child of the non-primary parent and divide that sum by the number of children to find the average parenting days under the different plans. *Id*. This figure is then used to determine the parenting time adjustment percentage under the Guidelines' Parenting Time Table found in section V(C). *Id*. But if each parent exercises more than half of the parenting time with at least one of the children, the court must use two worksheets to determine the child support obligations. *Id.*

**¶11**            In this circumstance, the Guidelines required the trial court to use only one worksheet. Because E.D. (140 days) and K.D. (19 days) were subject to different parenting plans, and Father did not have the majority of parenting days with either child, the trial court should have used a single

---

[1]            The Guidelines were renumbered January 1, 2022. Because the Guidelines remain substantively the same after the renumbering, we use the current numbering.

worksheet and averaged the parenting days. *See* Guidelines § V(F). Although the Guidelines permit limited deviation, the court provided no written explanation, much less a finding, regarding why following the Guidelines was unjust and no other deviation exception applies. Guidelines § IX(B)(3); *see also* Guidelines § IX(C)–(D) (providing for deviation under agreement, (C), and permissive deviation for factual scenarios that are not present here, (D)). Although a court may compromise an "individual figure" in its Guidelines calculation, using two worksheets is not a compromise but error. Guidelines § IX(E)(2). Because the record does not support a deviation, we remand to the trial court to calculate child support using a single worksheet and to recalculate any resulting overpayments. Guidelines § V(F).

## II. The Trial Court Erred in Finding Father Agreed to Pay for E.D.'s Gymnastics.

¶12         Father argues that insufficient evidence supports the trial court's conclusion that he agreed to pay for E.D.'s gymnastics. Father testified that he would agree to pay extra-curricular activities only if he acknowledged the extra-curricular expense in writing before the cost accrued. No other evidence shows that the parties had considered splitting extra-curricular activities costs, including the cost of E.D.'s gymnastics. Indeed, neither the Dissolution Decree nor any other child support order or Rule 69 agreement included language about the parties sharing extra-curricular costs. Mother provided no evidence that Father had agreed to pay gymnastics costs after dissolution. Thus, nothing shows that Father agreed to share the cost of E.D.'s gymnastics. *Little*, 193 Ariz. at 520 ¶ 5; *c.f. Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 493 ¶ 17 (App. 2020) (finding that the record reflected that Father said during a deposition that he would pay "a hundred a month" or "1200 per year" for "each child's gymnastics classes and that his statements were placed on the record in accordance with [Rule] 69(a)(2)").

## III. The Trial Court's Tax Benefit Allocation was Erroneous.

¶13         Father argues that the trial court's tax benefit allocation violated the Guidelines because he did not receive three-fifths of the available child tax credits. Under the Guidelines, parents were historically entitled to claim children as personal exemptions on income tax returns. Guidelines § XI(A). The exemptions were suspended for tax years 2018 through 2025, however, and parents instead may be eligible to claim a child tax credit and an additional child tax credit. *Id*. Accordingly, the Guidelines refers to these credits as "tax benefits." *Id*.

¶14 Unless otherwise agreed, the federal and state tax benefits are "allocated in a manner that allows each parent" a benefit "in proportion to the income of the parents." Guidelines § XI(B)(1)(a). A court does this by allocating benefits for the child in a single tax year or specific tax years. Guidelines § XI(B)(1)(b). Under the federal tax code, a parent is eligible for a child tax credit if a child is less than 17-years-old at the end of that year. *See* 2020 IRS Form 1040, Schedule 8812; *see also Porter v. Hall*, 34 Ariz. 308, 329 (1928) (taking judicial notice of federal law). But for the year 2021, the federal government extended the credit for a child who does not turn 18 before the first of the next year. 2021 IRS Form 1040, Schedule 8812. Although no Arizona case has held that failure to consider the child tax credit is error, this court found error when the trial court failed to allocate federal tax exemptions under the Guidelines' requirements. *See McNutt v. McNutt*, 203 Ariz. 28, 34 ¶ 26 (App. 2002). And no substantive difference between an exemption and a tax credit exists under the Guidelines. Guidelines § XI(A).

¶15 Here, the trial court correctly determined that Father earned three-fifths of the income attributable to the child support calculation and allocated him tax benefits for K.D. from 2021 through 2023, and E.D. for 2024 and 2025, while Mother received the exemptions for E.D. from 2021 to 2023. But Father will receive only one year of the child tax credit for the years he can claim K.D—2021—and will not receive a benefit for the years he can claim E.D. Mother, however, receives three years of the child-tax credit benefit for E.D. Under the trial court's order, Father merely receives one-fourth the child tax benefit, far from the three-fifths to which he is entitled under the Guidelines. Accordingly, the trial court abused its discretion, *see Lincoln v. Lincoln*, 155 Ariz. 272, 276 (App. 1987) (holding that the trial court abused its discretion by refusing to allocate the dependency exemption), and we therefore remand to the trial court to allocate the tax benefits consistent with this decision.

**CONCLUSION**

¶16 For the reasons stated, we vacate the child support order and remand to the trial court for proceedings consistent with this decision. Father requests his costs on appeal, which we grant upon compliance with ARCAP 21.