NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

RANDY AVERITT POAGE, *Petitioner/Appellant*,

*v.*

CHRISTINE BROOKS, *Respondent/Appellee*.

No. 1 CA-CV 22-0754 FC

FILED 2-8-2024

Appeal from the Superior Court in Maricopa County
No. FC2014-050317
The Honorable Paula A. Williams, Judge

**AFFIRMED IN PART; VACATED
AND REMANDED IN PART**

COUNSEL

Phelps & Moore, PLC, Scottsdale
By Jon L. Phelps
*Counsel for Petitioner/Appellant*

Kelley Law Group PLLC, Phoenix
By Cynthia K. Kelley, Brian S. Kelley
*Counsel for Respondent/Appellee*

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

**C A M P B E L L**, Judge:

¶1        Randy Poage (Father) appeals the trial court's order modifying child support, failing to modify the holiday parenting schedule, and awarding Christine Brooks (Mother) attorneys' fees and costs. Father asserts that the court erred in calculating child support by improperly including his overtime and second-job incomes and by implicitly finding a change of circumstances dating back to September 1, 2020. He argues the court failed to analyze whether modification of the holiday schedule was in the child's best interests. Finally, Father contends that the attorneys' fees award to Mother was improper because she failed to request fees in a pleading or motion. For the reasons below, we vacate the child support order and remand for appropriate determinations of off-duty income, overtime income, and healthcare costs. We affirm the attorneys' fees award and the denial of Father's request to modify the holiday schedule.

## BACKGROUND

¶2        Father and Mother divorced in 2014. They share custody of one child. Initially Mother waived child support, but in June 2017, she petitioned for a child support order. Father initially objected and did not provide any financial information. Based on the parties' stipulation, the court entered a decree modification ordering Father to pay $350 per month in child support beginning in September.

¶3        In August 2020, Mother again petitioned to modify their parenting plan and child support arrangement based on a substantial and continuing change in circumstances.[1] Almost two years later, the parties filed a joint pretrial statement identifying three unsettled issues: child

---

[1]    Mother cited Father no longer living a reasonable distance from the child's school, his alleged lack of prioritization of the child's online schooling, the child's routine unhappiness when with Father, Father's unstable new marriage, and lack of a bedroom for the child in Father's home.

support, holiday parenting time, and attorneys' fees. The court then held an evidentiary hearing. Both parties testified about income and reasons for and against changing the holiday schedule. By the time of the hearing, Father had received several pay raises, and his off-duty and overtime income continued to fluctuate. Mother, on the other hand, had retired early. Mother asked the court to adjust child support according to the Arizona Child Support Guidelines, A.R.S. § 25-320 app. ("Guidelines"), which would account for the new income disparity.[2]

¶4        In October 2022, the court entered an order modifying child support, maintaining the holiday schedule, and awarding Mother attorneys' fees and costs. The court imposed a new support payment of $682 per month and a $9,400 arrearage award to Mother. The arrearage amount was calculated using September 1, 2020, the first of the month following the filing of her petition, as the start date. The court then retroactively applied the financial information Father provided for purposes of the 2022 hearing. The court denied Father's request to modify the holiday schedule for failure to show substantial and continuing changed circumstances or that a modification would be in the child's best interests. Finally, the court granted Mother an attorneys' fee award due to Father's greater financial resources and because he "acted unreasonably" by failing to timely disclose all his financial information. Father timely appealed.

## DISCUSSION

¶5        Father challenges the modification order on several grounds. First, he argues the court had no evidentiary basis for a finding of substantial and continuing changed circumstances affecting child support that began on September 1, 2020. Second, he asserts the court erroneously calculated his off-duty income using his 2021 earnings when it determined that amount was "historically earned and is anticipated to continue in the future," as is required by Section II(A)(3)(b) of the Guidelines. He also makes a parallel argument regarding his overtime income. Father summarily argues that the child support award was "riddled with errors," citing both a deficit of evidence and that the evidence presented did not support the amount awarded. With respect to attorneys' fees, Father challenges the award based on Mother's failure to request fees in a pleading or motion as is required by Arizona Rule of Family Law Procedure 78(e)(1).

---

[2]    Mother testified the new child support obligation should be $682 per month.

Finally, Father argues the court erred by not engaging in a best-interests factor analysis when deciding to maintain the existing holiday schedule.

¶6            Father asks this court to vacate the modification order and remand with instructions to correctly calculate child support. Father implies a request to remand with instructions to engage in a best-interests factor analysis regarding holiday parenting time. He also asks this court to vacate the attorneys' fees awarded to Mother, and he seeks an award of attorney's fees and costs on appeal. We address each of his arguments in turn.

## I.       Child Support Calculation

¶7            We review a trial court's child support modification order for an abuse of discretion, which occurs if the record lacks competent evidence that would support the order. *Jenkins v. Jenkins*, 215 Ariz. 35, 37, ¶ 8 (App. 2007). We review de novo the lower court's interpretation and application of statutes. *Amadore v. Lifgren*, 245 Ariz. 509, 514, ¶ 5 (App. 2018).

### A.       Retroactive Modification Date

¶8            A child support award may only be modified by a showing of "changed circumstances that are substantial and continuing." A.R.S. § 25-327(A). The party seeking modification has the burden of showing such a change in circumstances. *Jenkins*, 215 Ariz. at 39, ¶ 16. A modification based on changed circumstances becomes effective "on the first day of the month following notice of the petition for modification" unless the court finds good cause to effectuate the modification on a different date. A.R.S. § 25-327(A). A court errs if it orders a modification to take effect on a date that "predates when the circumstances in a particular case became substantial and continuing." *Amadore*, 245 Ariz. at 516, ¶ 19.

¶9            Following the August 2022 evidentiary hearing, the court retroactively modified child support upon a finding of substantial and continuing changed circumstances beginning on September 1, 2020, the first day of the month following Mother's filing of the petition. *See* A.R.S. § 25-327(A). For this date to be erroneous, the court needed to have either 1) erred in accepting Mother's showing of changed circumstances or 2) erred in not finding good cause to effectuate the change on a different date.

¶10           To modify the existing child support order, Mother needed to prove changed financial circumstances "by a comparison with the circumstances existing at dissolution." *Richards v. Richards*, 137 Ariz. 225, 226 (App. 1983). Mother met her initial burden. At the time of her petition,

4

the only "evidence" of Father's income was Mother's estimate from the 2017 modification. When Father finally—albeit only partially—complied with the court's order to produce his financial information, that information illustrated a substantial and continuing change in circumstances based on the pay raises he received.[3]

### B. Off-Duty Income

¶11 Father argues the court erred by including all of his 2021 off-duty earnings in its income calculation. Central to his argument is that the amount of off-duty income he earns varies, making it unreasonable for the court to adopt a high-earning income year and attribute that amount to all other years. While Father has historically earned off-duty income and is likely to continue doing so, he argues that the 2021 amount used in the calculation ("$50,787") was uncharacteristically high. This argument is supported by the record. Father provided the court with his 2017, 2018, 2019, and 2020 tax returns. He also supplied his 1099 tax form for 2021. These documents show that his off-duty income (without withholding) was $24,362 in 2017, $26,172 in 2018, $23,349 in 2019, $17,242 in 2020, and $50,737.50 in 2021. Father could not provide his 2022 overtime income amount because the tax year was still ongoing at the time of trial.

¶12 Father explained that he worked more in 2021 to support his new wife and her three children. Because his expenses were lower before his new marriage and would decrease since he and his second wife divorced, he testified that his financial burden—and, consequently, his off-duty income—was historically lower, and could subsequently be lower going forward. He asked the court to calculate child support using an averaged amount of $21,081 for his off-duty income—what he claims is the average of his off-duty income for 2017 through 2020.

¶13 The trial court had discretion to include income beyond Father's full-time employment so long as it did not "require an extraordinary work regimen." Guidelines § (II)(A)(3)(b). "Determination of what constitutes an extraordinary work regimen depends on all relevant circumstances, including . . . the parent's relevant medical or personal circumstances." *Id.* In its modification order, the court acknowledged that the 2021 income was not representative of Father's normal off-duty

---

[3] Father testified he received raises, making his hourly rate at the time of the August 2022 hearing $44.13.

earnings: "This amount appears to be an extraordinarily high amount to attribute to Father as off-duty earnings for the other years at issue."

¶14 The record suggests the court calculated child support using Father's 2021 off-duty income as a sanction for his "fail[ure] to provide all records of his income that are relevant to this matter." While Father was not forthcoming with his financial information, the court erroneously stated it did not have off-duty income information for any year other than 2021. The court had sufficient evidence to conclude that Father typically earned around $20,000 per year in off-duty income. *See supra* ¶ 11. The court's frustration over Father's inadequate disclosures should not have manifested in its child support calculation, but rather in its decision to award Mother attorneys' fees. By imposing a child support obligation based on an unusually high annual income amount garnered by Father's extraordinary work regimen, the court abused its discretion. We vacate and remand for further proceedings to determine an appropriate off-duty income calculation.

### C. Overtime Income

¶15 The court also included overtime pay in the child support calculation. But the court was under the same restrictions: only that income which is "historically earned and is anticipated to continue into the future" can be included in the calculation. Guidelines § (II)(A)(3)(b). Moreover, only overtime that is mandatory may be included: "[v]oluntary overtime is excepted from the calculation to give parents the choice to work more" without the risk of creating the "'treadmill effect' of an ever-increasing child support obligation." *Hoobler v. Hoobler*, 254 Ariz. 130, 140, ¶ 24 (App. 2022) (citation omitted).

¶16 Father historically earns overtime income. He testified that about half of his overtime is mandatory and the other half is discretionary. His paystubs do not specify which hours are mandatory and which are voluntary. However, the record demonstrates that the amount of overtime he works varies. For example, at the time of trial in 2022, Father had worked two overtime hours that year compared to the "last few years" when he worked "significantly more overtime" when he had a greater need. In line with *Hoobler*, we remand with instructions to calculate the amount of mandatory overtime Father has historically earned that is likely to continue and to use that reduced amount in the child support calculation.

### D. Calculation Errors

¶17 Next, Father takes issue with allegedly clear errors made in the court's calculations. He cites 1) the court's reliance on his unsigned, undated affidavit, 2) a conceded health insurance error, and 3) a seemingly typographical error in the 2022 calculation. We review the alleged errors in order below.

#### 1. Sufficiency of the Affidavit

¶18 We accept the trial court's findings of fact unless they are clearly erroneous. *McNutt v. McNutt*, 203 Ariz. 28, 30, ¶ 6 (App. 2002). Where evidence is conflicting, "[w]e will defer to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). The record is unclear about Father's 2020 income, as the affidavit he provided conflicts with the tax forms supplied for the same year. Given this conflicting evidence, we defer to the trial court's reliance on the affidavit, meaning Father has shown no error. *See id*.

#### 2. Health Insurance

¶19 Although Mother argues the issue was not preserved for appeal, she admits in her answering brief that the health insurance allocation should be $133, not $200, and no evidence on record supports upholding the court's $200 credit. We therefore vacate this finding and remand for further proceedings to determine the correct health insurance allocation. *See McNutt*, 203 Ariz. at 302, ¶ 6; *Stop Exploiting Taxpayers v. Jones*, 211 Ariz. 576, 580, ¶ 17 (App. 2005) (discretion to address waived arguments on the merits).

#### 3. 2022 Monthly Income

¶20 Given an apparent transposition error, the court listed Father's 2022 monthly income as $12,963 rather than $12,693—the amount supported by the record. Again, Mother argues that although the issue was not preserved for appeal, in her answering brief, she admits that her worksheet contained a calculation error: "Father is correct that the available evidence supports a calculation of $12,693 per month for Father's income. It appears that the court's calculation of Father's income includes a transcription error . . . ." We therefore vacate this finding and remand for further proceedings to determine Father's 2022 income. *See Jones*, 211 Ariz. at 580, ¶ 17.

## II.    Attorneys' Fees

**¶21**    Father argues that he lacked notice that Mother would seek an award of attorneys' fees. We disagree. Arizona Rule of Family Law Procedure 78(e)(1) requires a claim for attorneys' fees to be filed "in the pleadings or by motion" before trial or a post-judgment evidentiary hearing. Ariz. R. Fam. L.P. 78(e)(1). The request must also be made in the pretrial statement. *Id.* Non-compliance under this Rule may be waived upon a showing of good cause. *Id.* Statutorily, the trial court has discretion to order a party to pay reasonable fees and costs "after considering the financial resources of both parties and the reasonableness of the positions each party has taken." A.R.S. § 25-324(A). We review an award of attorneys' fees under A.R.S. § 25-324 for an abuse of discretion. *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 36 (App. 2011).

**¶22**    Here, Mother requested attorneys' fees in the joint pretrial statement, citing Father's repeated failure to disclose his financial information. She did not file a motion requesting fees; however, the court implicitly waived her non-compliance when it invoked its statutory authority to award fees as a sanction. Though best practice would have been to file a separate motion requesting fees (in addition to the joint pretrial statement), Father was on notice of Mother's intent to seek fees and has not suffered any prejudice on this issue. *Cf. In re Restated Trust of Crystal H. West*, 249 Ariz. 355, 358, ¶ 8 (App. 2020) (recognizing that civil rule governing fee requests is intended to provide notice); *Salas v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 141, 143 (App. 1995) (recognizing that procedural due process includes notice and the opportunity to be heard in a meaningful time and manner).

**¶23**    The court's order awarding attorneys' fees is based on a finding that Father acted unreasonably throughout litigation. Father has shown no abuse in discretion here because failure to supply the court with financial information may constitute an unreasonable position. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 286, ¶ 32 (App. 2019) (upholding attorneys' fees award based on "insufficient disclosure and hiding of assets"). And, also consistent with A.R.S. § 25-324(A), the court considered Father's financial resources relative to Mother's, finding "that there is substantial disparity of financial resources between the parties. Because of the disparity [Father] has considerably more resources available to contribute toward [Mother's] attorney fees and costs." We find no error in the fee award.

## III.    Holiday Schedule

¶24      Father's final argument is that the court erred by not engaging in a best-interests factor analysis when it declined to modify the holiday parenting schedule. Father requested this modification in his answer. In deciding whether to modify parenting time, the court must engage in a two-part inquiry that first asks whether a substantial and continuing change in circumstances has occurred since the last order. *Pridgeon v. Superior Court (LaMarca)*, 134 Ariz. 177, 179 (1982). If so, then the court must ask whether the modification will be in the child's best interests. *Id*. Without evidence of changed circumstances, the court need not engage in the second best-interests prong of the inquiry. *Black v. Black*, 114 Ariz. 282, 283 (1977) ("Only after [the] initial finding has been made may the trial court then proceed to determine whether a change in custody will be in the best interests of the child.").

¶25      The court denied Father's request to modify holiday parenting time, stating "Father did not demonstrate that it was in the child's best interest to be with Father's family every other year for Christmas instead of seeing Mother during that holiday." Though the court did not elaborate, it did not need to. The record lacked any evidence of changed circumstances affecting parenting time during the holidays. To the contrary, Father testified extensively about long-standing traditions and routine travel schedules. Rather than demonstrating a change, Father simply expressed his dissatisfaction with the existing schedule. Because we defer to the court's finding of a change in circumstances—or lack thereof—we affirm the court's denial of Father's parenting time modification request. *See Pridgeon*, 134 Ariz. at 179.

## CONCLUSION

¶26      Because we find an abuse of discretion in the court's child support calculations, we vacate the court's order and remand for appropriate determinations of off-duty income, overtime income, and healthcare costs. We otherwise affirm the court's attorneys' fees award to Mother and denial of Father's parenting time modification request.

¶27      Both parties seek fee awards on appeal. While our decision largely favors Father, the necessity for this appeal arises from his unreasonable litigation tactics in failing to disclose his financial information. As such, we deny Father's request for fees and costs. *See* A.R.S. § 25-324(A).

**¶28** We similarly deny Mother's request. On appeal, Mother only prevailed insofar as the holiday schedule did not change and her attorneys' fees award from below was upheld. Father's unreasonableness at the trial level and the disparity in income between the parties was addressed in that fee award. Father was not unreasonable in his decision to appeal an erroneous child support calculation.



AMY M. WOOD • Clerk of the Court
FILED: AA